# EXHIBIT A

# THE ASSET PURCHASE AGREEMENT

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of the ___ day of February 2010, is made and entered into by and among **SWOOZIE'S, INC.**, (the "Seller") and Hudson Capital Partners, LLC (the "Purchaser").

WHEREAS, Seller is currently a debtor in possession under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in Case Number _____ (the "Bankruptcy Case") pending before the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court");

WHEREAS, Seller desires to sell, and Purchaser desires to purchase, the assets described in Section 1.01 hereto, free and clear of all liens, claims and encumbrances pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and subject to the terms and conditions contained in this Agreement;

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements, covenants, representations and warranties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions hereinafter set forth, the parties hereto agree as follows:

## ARTICLE I
## SALE AND PURCHASE OF ASSETS

**1.01 Sale and Purchase of Acquired Assets.** On the terms and subject to the conditions hereinafter set forth, Seller hereby agrees to sell, convey, assign, transfer and deliver to Purchaser, free and clear of any and all liens, claims, charges, encumbrances and security interests of any kind or nature, and Purchaser agrees to purchase and accept from Seller, the following assets (collectively, the "Acquired Assets"):

(a) The exclusive rights to serve Seller's exclusive agent with exclusive "designation rights" for purpose of disposing of all inventory owned by Seller and including but not limited to that listed on Schedule 1.01(a) hereto, with replacements and similar goods (the "Inventory");

(b) The exclusive rights to serve Seller's exclusive agent with exclusive "designation rights" for purpose of disposing of all equipment owned by Seller, including, but not limited to the Equipment identified on Schedule 1.01(b) hereto, with all replacements and similar equipment (collectively, the "Equipment");

(c) The exclusive rights to serve as Seller's exclusive agent with exclusive "designation rights" for purpose of disposing of all furniture and fixtures owned by Seller, including, but not limited to the furniture and fixtures identified on Schedule 1.01(c) hereto, with all replacements and similar furniture and fixtures (the "Furniture and Fixtures");

(d) The exclusive rights to serve Seller's exclusive agent with exclusive "designation rights" for purpose of disposing of all ownership, maintenance, and warranty records with respect to the Inventory, Equipment, and Furniture and Fixtures;

(e) The exclusive rights to serve as Seller's exclusive agent with exclusive "designation rights" for purpose of disposing of all Intellectual Property (excluding Seller's customer lists). "Intellectual Property" means all of Seller's rights, title and interest in and shall include but is not limited to the items listed on Schedule 1.01(d) attached hereto and made a part hereof, including, without limitation, the following items: (a) inventions, discoveries, processes, designs, techniques, developments and related improvements, whether or not patentable; (b) United States patents, patent applications, divisionals, continuations, reissues, renewals, registrations, confirmations, re-examinations, extensions and any provisional applications, of any such patents or patent applications, and any foreign or international equivalent of any of the foregoing; (c) United States registered or pending trademark, trade dress, service mark, service name, trade name, brand name, logo, domain name, or business symbol and any foreign or international equivalent of any of the foregoing and all goodwill associated therewith; (d) work specifications, software (including object and source code listing) and artwork; (e) technical, scientific and other know-how and information, trade secrets, methods, processes, practices, formulas, designs, assembly procedures, specifications owned or used by Merchant; (f) copyrights; (g) work for hire; and (h) any and all rights of the Seller to the name "Swoozie's, Inc." or any derivation thereof, and the Seller's entire customer list and database and all assets used or useful by the Seller in the conduct of its business over the internet or in any electronic medium, including any websites or domain names owned by the Seller. Notwithstanding the following, the Purchaser hereby conveys to Seller or its assignee the limited license to use the name "Swoozie's, Inc." with respect to the continued the wind-down and the administration of its estate; and

(f) The exclusive rights to serve Seller's exclusive agent with exclusive "designation rights" for purpose of disposing of all other assets owned by Seller, including, but not limited to the other assets identified on Schedule 1.01(e) hereto (the "Other Assets").

1.02 **Access to Locations**. Following the sale and purchase of the Acquired Assets, to the extent that Seller retains the right to control access to the locations where the Acquired Assets are located, Seller shall provide Purchaser, at no cost or expense to Purchaser whatsoever, with peaceful use and occupancy of, and reasonable access (including reasonable before-hours and after-hours access and normal utilities/phone service) to, those locations for the sole purposes of preparing for, conducting (including inspection), and completing sales of the Acquired Assets to third parties.

1.03 **Excluded Liabilities.** Purchaser shall not assume or become liable for any obligations, commitments or liabilities of Seller, whether known or unknown, absolute, contingent or otherwise, and whether or not related to the Acquired Assets (the obligations and liabilities of Seller not assumed by Purchaser are hereinafter referred to as the "Excluded Liabilities").

1.04 **Excluded Assets**. Except as provided in the Agency Agreement and the Designation Rights Agreement (as defined below) and this Agreement, Purchaser is not purchasing any of the following assets: (a) Seller's cash; (b) Seller's causes of action, other than causes of action related to the Acquired Assets; (c) Seller's books and records; provided however Purchaser shall have reasonable access to such books and records to the extent necessary to

- 2 -

consummate the transactions contemplated by the Agreement and/or the Related Agreements (as defined below); (d) Seller's credit card deposits and receivables; (e) Seller's security deposits; (f) Seller's insurance refunds; and (g) Seller's tax refunds.

### ARTICLE II
### PURCHASE PRICE & CLOSING

**2.01    Purchase Price.**

(a) In consideration for the Acquired Assets, along with other consideration as set out in the contemporaneously executed Agency Agreement (the "Agency Agreement") and Designation Rights Agreement (the "Designation Rights Agreement" and together with the Agency Agreement, the "Related Agreements")) between Purchaser and Seller, Purchaser shall tender to Seller the Guaranteed Amount (as defined in Section 3.1 of the Agency Agreement) and such other amounts as are provided in Section 3.2 of the Agency Agreement. The Guaranteed Amount shall be paid according to the timing and payment mechanisms established in the Related Agreements.

(b) The Guaranteed Amount has been calculated and agreed upon based upon Seller's representations with respect to Schedules 1.01(a) and (b) in addition to all terms set forth in this Agreement and related agreements. Specifically, Purchaser has relied on Seller's representations that: (i) at least all of the assets identified on those schedules are: (x) available for immediate sale and pickup at the Seller-owned or leased locations identified on the schedules, and (y) in substantially the same condition as they were when inspected by representatives of Purchaser in or about February 2010; (ii) all personal property or excise taxes on all the Acquired Assets will have been paid through Closing Date (as defined below); (iii) Seller has the ability to immediately deliver good and marketable title to Equipment, Furniture and Fixtures, Other Assets and Intellectual Property to purchaser free and clear of all liens, claims and encumbrances in connection with the Acquired Assets, and (iv) Seller has the ability to deliver accurate maintenance history records for the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property in connection with the Acquired Assets.

**2.02    The Closing.** The closing of the purchase and sale of the Acquired Assets and the consummation of the other transactions contemplated by this Agreement and the Related Agreements (the "Closing") shall take place as soon as practically possible after the satisfaction or waiver of the conditions set forth in Article VIII hereof, and in no event more than one (1) day following the entry of the Approval Order, at a location mutually agreeable to the parties hereto. The date on which the Closing actually occurs is herein referred to as the "Closing Date." At the Closing, all of the transactions contemplated by this Agreement shall be deemed to occur simultaneously and become effective as of 12:01 a.m. Atlanta local time on the Closing Date (the "Effective Time").

**2.03    Deposit.** Upon execution of this Agreement, Purchaser will execute and deliver to Seller and the Deposit Escrow Agent the Deposit Escrow Agreement and, upon execution and delivery thereof by each of the other parties thereto, Purchaser will simultaneously deliver to the Deposit Escrow Agent, pursuant to the terms of the Deposit Escrow Agreement, 10% of the Guaranteed Amount in immediately available funds (the "Cash Deposit"). Any Cash Deposit

- 3 -

shall be held by the Deposit Escrow Agent in an interest bearing account reasonably acceptable to Purchaser and Seller. The Cash Deposit shall be held by the Deposit Escrow Agent to serve as an earnest money deposit under this Agreement to be released as follows:

(a) **Effect of Closing.** If the Closing shall occur, Seller and Purchaser shall jointly instruct the Deposit Escrow Agent to, on the Closing Date, deliver the Cash Deposit, together with all accrued investment income thereon, by wire transfer of immediately available funds, on behalf of Seller, to the Administrative Agent (and such amounts shall be applied toward the payment of the Guaranteed Amount) in accordance with the terms of the Deposit Escrow Agreement.

(b) **Effect of Termination.** If this Agreement is validly terminated prior to the Closing Date, the Deposit Escrow Agent shall deliver the Cash Deposit in accordance with the terms of the Deposit Escrow Agreement. If pursuant to this Agreement and the Deposit Escrow Agreement the Cash Deposit is delivered to, or becomes deliverable to, anyone other than Purchaser the Cash Deposit will constitute liquidated damages and shall be delivered to an account or accounts designated by the Administrative Agent (pursuant to the Approval Order) on behalf of Sellers. Because it would be impractical and extremely difficult ,to determine the extent of any damages that might result from a breach of, or default under, this Agreement by Purchaser prior to the Closing Date, it is understood and agreed that such liquidated damages represent Purchaser's and Seller's reasonable estimate of actual damages, such liquidated damages do not constitute a penalty and the Cash Deposit will constitute Seller's sole and exclusive remedy for any breach of, or default under, this Agreement by Purchaser prior to the Closing Date. Review

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchaser as follows as of the date hereof and as of the Closing:

3.01 **Validity.** Subject to approval by the Bankruptcy Court as set forth in Section 6.01, this Agreement has been duly executed and delivered by duly authorized officers of Seller and constitutes the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms except as enforceability may be limited by applicable equitable principles (whether applied at a proceeding in law or in equity) or by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally, to the exercise of judicial discretion in accordance with general equitable principles and to equitable defenses that may be applied to the remedy of specific performance. Seller has the corporate power and authority necessary to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby.

3.02 **Organization.** Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware.

3.03 **Title to Acquired Assets; Encumbrances.** Seller has good, valid and marketable title to the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property free and clear of any and all liens, claims, charges, encumbrances and security interests of any

kind or nature. Purchaser is acquiring the Acquired Assets free and clear of any liens, claims, interests, or Encumbrances. Furthermore, no action, arbitration, suit, notice, or legal, administrative or other proceeding before any court or governmental body has been instituted by or against Seller, or has been settled or resolved, or to Seller's knowledge, is threatened against or affects Seller, relative to Equipment, Furniture and Fixtures, Other Assets and Intellectual Property, or which questions the validity of this Agreement, or that if adversely determined, would materially adversely affect the transaction contemplated by this Agreement.

**3.04 Brokers and Finders.** Seller has not incurred any obligation or liability to any party for any brokerage fees, agent's commissions or finder's fees in connection with the transactions contemplated by this Agreement.

**3.05 No Conflict**. No contract or other agreement to which Seller is a party or by which the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property are bound will prevent or impair the transaction contemplated by this Agreement.

**3.06 Removal of Data**. Prior to the Closing Date, Seller will have permanently removed from all of the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property any and all data relating to Seller's former customers and employees (including without limitation names, addresses (street and email), etc.), and any other data, programs, intellectual property and the like, the transference of which in connection with the Sale contemplated by this Agreement, would constitute a violation of applicable law or contract.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller that, as of the date hereof and as of the Closing:

**4.01 Organization.** Purchaser is an entity duly organized, validly existing.

**4.02 Authority and Binding Effect.** This Agreement has been duly executed and delivered by duly authorized officers of Purchaser and constitutes the legal, valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms. Purchaser has the corporate power and authority necessary to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby.

**4.03 No Conflict.** Neither the execution, delivery and performance of this Agreement by Purchaser nor the consummation by Purchaser of the transactions contemplated hereby (a) will result in a violation by Purchaser of any law or order of any court or governmental unit to which Purchaser is subject, or (b) requires the consent of any third party.

**4.04 Brokers and Finders.** Purchaser has not incurred any obligation or liability to any party for any brokerage fees, agent's commissions or finder's fees in connection with the transactions contemplated by this Agreement.

## ARTICLE V
## COVENANTS AND ADDITIONAL AGREEMENTS OF SELLER AND PURCHASER

5.01 **Consents and Approvals.** Seller agrees to use its commercially reasonable efforts to obtain, prior to the Closing Date, the waiver, consent and approval of all persons whose waiver, consent or approval is required in order to consummate the transactions contemplated by this Agreement.

5.02 **Expenses.** Except as expressly provided for herein or in any Related Agreement, each of Purchaser and Seller shall be responsible for all the expenses and fees incurred by it in connection with the transactions contemplated hereby. The Seller shall use reasonable efforts to obtain from the Bankruptcy Court an order exempting under § 1146 of the Bankruptcy Code Purchaser from paying any and all sales, transfer or transaction taxes imposed by any taxing authority, including without limitation, any state, county, municipality or other subdivision thereof, in connection with the transfers to be made through this Agreement. To the extent that, for any reason, Seller is unable to procure the entry of such an order, Purchaser shall have no liability for any such taxes and such taxes shall be paid by Seller as an administrative expense of its bankruptcy estate.

5.03 **Further Assurances.** At any time and from time to time after the date of this Agreement, Seller shall, at the request of Purchaser, take any and all actions reasonably necessary to fulfill Seller's obligations hereunder, including executing and delivering such further instruments of conveyance, sale, transfer and assignment, and taking such other actions reasonably necessary or desirable to effectuate the transfer of the Acquired Assets to Purchaser.

5.04 **Taxes.**

(a) Personal Property Taxes including, without limitation, accruals or prepayments thereof shall be paid by Seller.

(b) For purposes of this Section 5.04, the term "**Personal Property Taxes**" shall mean ad valorem taxes imposed upon the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property.

5.05 **Condition of Acquired Assets.** Except as expressly set forth in this Agreement, the Acquired Assets are being sold "as is, where is" without any representation or warranty of any kind, either express or implied, including, without limitation, any representation or warranty as to the design, quality or condition of the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property, any warranty of merchantability or fitness of the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property for any particular purpose or as to any other matter relating to the Acquired Assets or any part thereof.

5.06 **Conduct of Business Prior to Closing.** From the date hereof to the date of final disposition of the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property as contemplated by this Agreement, and except as required or contemplated by this Agreement, and except to the extent that Purchaser shall otherwise consent in writing and subject to the requirements and restrictions of the Bankruptcy Court proceedings, Seller shall:

(a) Operate its business in all material respects in compliance with the Bankruptcy Code and any orders entered by the Bankruptcy Court in the Bankruptcy Case;

(b) Not waive or agree to waive any rights of material value relating to the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property or allow to lapse or fail to keep in force any material license, permit, authorization or other material right relating thereto;

(c) Not make or permit any material amendment or termination of any material contract, agreement or license included in the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property;

(d) Maintain the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property in their present order and condition, reasonable wear and use (and normal mileage) excepted, and maintain all material policies of insurance covering the Acquired Assets in amounts and on terms substantially equivalent to those in effect on the date hereof;

(e) Comply in all material respects with all laws applicable to the conduct of the business and the ownership of the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property; and

(f) Not to take any action that would otherwise materially impair the Acquired Assets.

## ARTICLE VI
## BANKRUPTCY RELATED PROVISIONS

**6.01    Bankruptcy Court Approval.**

(a) Pursuant to the Motion of the Debtor [ ] (the "Sale Motion"), Seller shall obtain authorization to sell the Acquired Assets, free and clear of all encumbrances, to Purchaser through an order of the Bankruptcy Court (the "Approval Order"). The Approval Order shall contain a finding that Purchaser has acted in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code and shall be in form and substance reasonably satisfactory to Seller and Purchaser.

(b) In the event an appeal is taken, or a stay pending appeal is requested, from the Approval Order, Seller shall immediately notify Purchaser of such appeal or stay request and shall provide to Purchaser promptly a copy of the related notice of appeal or order of stay. Seller shall also provide Purchaser with written notice of any motion or application filed in connection with any appeal from either of such orders.

(c) From and after the date hereof, Seller shall not take any action which is intended, or fail to take any action the intent of which failure to act would result in the reversal, voiding, modification or staying of the Approval Order.

## ARTICLE VII
## DELIVERY OF DOCUMENTS

**7.01    Delivery of Documents.**  At the Closing or at Purchaser's option, at such later time, the parties shall exchange all duly executed documents and other instruments required to consummate the transactions contemplated by this Agreement, including, but not limited to:

(a)    Bills of sale, deeds, assignments, transfers and other instruments of conveyance, as appropriate, all in form reasonably satisfactory to Purchaser and Seller, with respect to the Equipment, Furniture and Fixtures, Other Assets and Intellectual Property;

(b)    The Approval Order.

## ARTICLE VIII
## CONDITIONS PRECEDENT

**8.01    Conditions Precedent to Purchaser's Obligations.**  The obligation of Purchaser to consummate the transactions provided for in this Agreement is subject to the satisfaction of each of the following conditions on or before the Closing, any of which may be waived by Purchaser in its sole discretion:

(a)    Seller shall have duly performed in all material respects all of the covenants, agreements and conditions contained in this Agreement to be performed or satisfied by Seller on or prior to the Closing Date, and Purchaser shall have received a certificate dated as of the Closing Date, executed by a duly authorized officer of Seller, to such effect.

(b)    The Approval Order shall have been entered by the Bankruptcy Court and shall not be stayed pending appeal or reversed.

(c)    The representations and warranties in this Agreement and the related agreements are true and correct in all material respects.

**8.02    Conditions Precedent to Seller's Obligations.**  The obligation of Seller to consummate the transactions provided for in this Agreement is subject to the satisfaction of each of the following conditions on or before the Closing, any of which may be waived by Seller in its sole discretion:

(a)    The Approval Order shall have been entered by the Bankruptcy Court and shall not be stayed pending appeal or reversed.

## ARTICLE IX
## TERMINATION

**9.01    Method of Termination.**  This Agreement may be terminated at any time prior to the Closing Date:

(a)    by the mutual consent of Seller and Purchaser; or

(b)     the Approval Order shall be entered by March 26, 2010, unless such time is extended by mutual agreement of Seller and Purchaser.

**9.02    Notice of Termination.** Notice of termination of this Agreement shall be given by the party so terminating to the other party hereto in accordance with Section 10.01 of this Agreement.

**9.03    Effect of Termination.** If this Agreement is terminated pursuant to Section 9.01 hereof, this Agreement shall (except as expressly set forth herein) become void and of no further force and effect, and, except as set forth in this Section 9.03, no party (or any of its officers, directors, members, managers, partners, employees, agents, or representatives) shall be liable to any other party for any loss as a result of such termination. If the nonoccurrence of Closing is the direct or indirect result of a default of or breach by any party of its obligations hereunder, such defaulting or breaching party shall be fully liable to the other party hereto for any such breach or default.

## ARTICLE X
## MISCELLANEOUS

**10.01    Notices.**

(a)    All notices, requests, demands and other communications hereunder shall be (i) delivered by hand, (ii) mailed by registered or certified mail, return receipt requested, first class postage prepaid and properly addressed, (iii) sent by national overnight courier service, or (iv) sent by facsimile, graphic scanning or other telegraphic communications equipment to the parties or their assignees, addressed as follows:

If to Purchaser:

If to the Merchant:    Swoozie's, Inc.
                      80 West Wieuca Rd, NE
                      Suite 302
                      Atlanta, Georgia 30342
                      Attn: Kelly Plank-Dworkin
                      Fax: (404)888-0145

With a copy to:       Clear Thinking Group LLC
                      401 Towne Centre Drive
                      Hillsborough, NJ 08844
                      Attn: Lee Diercks
                      Fax: (908) 359-5940

With a copy to:       Alston & Bird, LLP
                      One Atlantic Center
                      1201 West Peachtree Street
                      Atlanta, GA 30309
                      Attn:   Dennis J. Connolly

-9-

        Wendy R. Reiss
        Sage M. Sigler
        Fax: (404) 253-8791

With a copy to:   Wells Fargo Retail Finance, LLC
        c/o Jay S. Rankin
        Parker Hudson Rainer & Dobbs LLP
        285 Peachtree Center Avenue, NE
        1500 Marquis Two
        Atlanta, GA  30303
        Fax: (404) 522-8409

With a copy to:   Official Committee of Unsecured Creditors

   (b)  All notices, requests, instructions or documents given to any party in accordance with this Section 10.01 shall be deemed to have been given (i) on the date of receipt if delivered by hand, overnight courier service or if sent by facsimile, graphic scanning or other telegraphic communications equipment or (ii) on the date three (3) business days after depositing with the United States Postal Service if mailed by United States registered or certified mail, return receipt requested, first class postage prepaid and properly addressed.

   (c)  Any party hereto may change its address specified for notices herein by designating a new address by notice in accordance with this Section 10.02.

   **10.02  Entire Agreement.**  This Agreement, the Schedules and the Exhibits constitute the entire agreement between the parties relating to the subject matter hereof and thereof and supersede all prior oral and written, and all contemporaneous oral negotiations, discussions, writings and agreements relating to the subject matter of this Agreement.  The terms of this Agreement control and supersede any course of performance or usage of the trade that is inconsistent with such terms.

   **10.03  Modifications, Amendments and Waivers.**  The failure or delay of any party at any time or times to require performance of any provision of this Agreement shall in no manner affect its right to enforce that provision.  No single or partial waiver by any party of any condition of this Agreement, or the breach of any term, agreement or covenant or the inaccuracy of any representation or warranty of this Agreement, whether by conduct or otherwise, in any one or more instances shall be construed or deemed to be a further or continuing waiver of any such condition, breach or inaccuracy or a waiver of any other condition, breach or inaccuracy.

   **10.04  Successors and Assigns.**  This Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the parties hereto, and their respective estates, successors, legal or personal representatives, heirs, distributees, designees and assigns, but no assignment shall relieve any party of the obligations hereunder.  This Agreement cannot be assigned by any party without the prior written consent of the other parties hereto; provided, however, that Purchaser may assign this Agreement to any entity controlling, controlled by or under common control with Purchaser.

**10.05  Severability.**  Should any one or more of the provisions of this Agreement be determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby.

**10.06  Choice of Law.**  This Agreement shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of Delaware applicable to contracts made and wholly performed within that state.

**10.07  No Third-Party Beneficiaries.**  Nothing in this Agreement, whether express or implied, is intended or shall be construed to confer upon or give to any person, other than the parties hereto, any rights, remedies or other benefits under or by reason of this Agreement.

**10.08  Counterparts.**  This Agreement may be executed by facsimile signature in any number of counterparts, each of which shall be an original; but all of such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, Purchaser and Seller have duly executed this Agreement as of the date first above written.

**SELLER:**

Swoozie's, Inc.

By:_____
Title: _____

[]

for **PURCHASER:**

_____

By: A. R. Williams
Title: Chief Financial Officer

## SCHEDULE 1.01(A)—INVENTORY

## SCHEDULE 1.01(B)—EQUIPMENT

## SCHEDULE 1.01(C)—FURNITURE AND FIXTURES

## SCHEDULE 1.01(D)—INTELLECTUAL PROPERTY

## SCHEDULE 1.01(E)—OTHER ASSETS

SCHEDULE 1.01(E)—OTHER ASSETS