# **EXHIBIT D**

# **BIDDING PROCEDURES**

BIDDING PROCEDURES

The following procedures (collectively, the "**Bidding Procedures**") shall govern the auction (the "**Auction**") of all of the Debtor's right, title and interests in certain assets (the "**Assets**") of Swoozie's, Inc. ("**Debtor**"), debtor in possession in a case pending in the United States Bankruptcy Court for the Northern District of Georgia (the "**Court**").

These Bidding Procedures have been approved and authorized by an order of the Honorable C. Ray Mullins, United States Bankruptcy Court Judge, dated March __, 2010 (the "**Bidding Procedures Order**") in the chapter 11 case of Debtor, which case was commenced on March 2, 2010 (the "**Petition Date**").  All decisions made by Debtor regarding the implementation of these Bidding Procedures, including at any Auction or sale contemplated herein, shall be made after consultation with Wells Fargo Bank, National Association, Debtor's prepetition lender and postpetition DIP lender ("**Wells Fargo**") and (b) counsel to the official committee of unsecured creditors appointed in this case (the "**Committee**").

1. Assets to be Sold

Debtor will consider bids for its Assets in any combination.  The Assets will be sold free and clear of all liens, claims, encumbrances, and other interests, subject to agreement to the contrary with the successful bidder.  The Assets to be so auctioned include, among other things, all the business, goodwill, operations as a going concern (if applicable), assets, interests and rights owned, leased, licensed or used by Debtor of every kind and wherever situated.  The Assets do not include (i) Debtor's rights under any pre-petition or post-petition financing agreements, (ii) any bankruptcy causes of action, causes of action against insiders (or claims against insurance related thereto) or causes of action against parties asserting secured claims against Debtor; or (iii) unless otherwise expressly specified, any claims or causes of action not related to the Assets being transferred or sold pursuant to the Auction.

The Assets will be offered in the following overlapping general categories:

**All Assets Combined**: All or substantially all of the Assets of Debtor.

**Inventory/Merchandise**: All finished goods inventory that is owned by Debtor.

**Furniture, Fixtures and Equipment**: Furniture, fixtures and equipment (other than artwork and visuals) owned by Debtor.

**Intellectual Property**: All intellectual property owned by Debtor.

**Lease Designation Rights**: Right to act as Debtor's exclusive agent with respect to designating rights under Debtor's interest in nonresidential real property leases.

At the Auction, all bidders (including Hudson) will be required to allocate and specify any portion of the proposed purchase price that is attributable to Assets other than inventory and merchandise. With respect to Assets that may be subject to liens asserted on Schedule 1 to these Bid Procedures, Debtor may require a bidder to allocate the proposed purchase price on a line item by line item basis.

Any party in interest who wishes to receive a copy of the Sale Motion, including all exhibits thereto, must make such request in writing to Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, Georgia 30309, Attn: Wendy R. Reiss (Telephone: 404-881-4984, Facsimile: 404-253-8791, wendy.reiss@alston.com).

2. The Stalking Horse Agreement with Hudson Capital Partners, LLC

Debtor has entered into an Asset Purchase Agreement (the "**APA**"), an Agency Agreement (the "**Agency Agreement**") and a Lease Designation Rights Agreement (the "**Lease Designation Agreement**") (collectively, the "**Agreements**") with Hudson Capital Partners, LLC ("**Hudson**"), pursuant to which Hudson would acquire substantially all of Debtor's Assets and all Assets described in Section 1 hereof, subject to higher or otherwise better offers and court approval. In the Agreements, the Assets are collectively defined to include, among other things, all Leaseholds, Equipment, Fixtures, Inventory, and Intellectual Property (as those terms are defined in the Agreements) in which Debtor has an interest, and all proceeds and products thereof.

The proposed Guaranteed Amount (as defined in the Agency Agreement) under the Agreements is $5,430,000, subject to certain adjustments as described in Section 5.3 and 10.1 of the Agency Agreement.

Hudson has provided Debtor a deposit in the amount of $543,000, which is ten percent (10%) of the estimated amount of the Guaranteed Amount.

The Agency Agreement provides for the payment of a breakup fee to Hudson in an amount equal to $75,000, which will be payable only if Hudson is ready, willing and able to close and a higher or otherwise better alternative transaction or transactions are closed, and only from the cash proceeds paid from such alternative transaction(s) (a "**Breakup Fee**").

3. Submission of Bids

Debtor intends to deliver requests for bids to all parties who are known to have expressed an interest in acquiring the Assets.

In the Auction and Hearing Notice, Debtor will invite all potential bidders to request a copy of a confidentiality agreement from the Debtor's financial advisors, Clear Thinking Group ("**CTG**"). The Auction and Hearing Notice will be served upon all parties who appear on Debtor's Master Service List, Landlords with respect to Debtor's non-residential real property leases, the Attorney General's Office for each state in which

2

Debtor's stores are located, parties having liens on Debtor's Equipment and all other parties requesting notice in this chapter 11 case. CTG, on its own initiative, may also send a copy of a confidentiality agreement to those parties who have not yet executed one but whom CTG, Debtor, and/or Wells Fargo have identified as being likely to be interested in making an offer to purchase the Assets and participating in the Auction. All parties who timely execute and return a confidentiality agreement to CTG and who provide, in Debtor's discretion, in consultation with Wells Fargo and counsel to the Committee, information demonstrating sufficient financial wherewithal, will be provided certain due diligence materials, including, but not limited to, a process letter, and access to an electronic Data Room containing information, among other things, relevant to Debtor's inventory, forecasts, earnings and revenues.

Thereafter, Debtor and CTG shall entertain any further reasonable requests for additional information and due diligence from any party who has so executed a confidentiality agreement and provided the required satisfactory evidence of financial wherewithal, and has also submitted a written non-binding expression of interest to the reasonable satisfaction of Debtor and its advisors. Debtor, in its discretion and after consultation with Wells Fargo and counsel to the Committee, may deny any such requests for additional information, if, after taking into account, among other things, business factors (such as whether the proposed purchaser is currently a competitor of Debtor), legal, regulatory, and other considerations, Debtor determines that denying such a request would be in the best interest of its estate and creditors or is otherwise consistent with the goals of the Auction and the Sale.

Written bids for the acquisition of the Assets must be received by Clear Thinking Group, Lee Diercks (ldiercks@clearthinkinggrp.com), Alan Minker (aminker@clearthinkinggrp.com), Roxanne Norris (rnorris@clearthinkinggrp.com); and Alston & Bird LLP, Wendy R. Reiss (wendy.reiss@alston.com), Sage M. Sigler (sage.sigler@alston.com), Dennis J. Connolly (dennis.connolly@alston.com); and; counsel to Wells Fargo, Parker Hudson Rainer & Dobbs LLP.; James S. Rankin (jsr@phrd.com); and counsel to the Committee, [_____] no later than 12:00 noon on March 23, 2010 (the "**Bidding Deadline**"), as scheduled pursuant to the Bidding Procedures Order. Debtor, in consultation with Wells Fargo and counsel to the Committee may, but in no way is obligated to, extend the deadlines contained in the Bidding Procedures for one or more Qualified Bidders (as such term is defined below).

Only Qualified Bidders will be entitled to bid at the Auction, unless either Debtor, in consultation with Wells Fargo and counsel to the Committee, or the Court determines otherwise. Hudson will be deemed a Qualified Bidder for purposes of the Auction. Within 24 hours after the Bidding Deadline, Debtor shall notify all parties who submitted a bid whether or not they constitute a Qualified Bidder.

In addition to Hudson, a "Qualified Bidder" is one who has substantially complied with the terms and conditions set forth herein and has demonstrated the ability to close the transaction to the reasonable satisfaction of Debtor, in consultation with Wells Fargo and counsel to the Committee. In order to be considered for Qualified Bidder status, a Person must (a) make a Bid (as that term is defined below); (b) provide

3

evidence reasonably satisfactory to Debtor and its financial advisor (in consultation with Wells Fargo and the Committee) of such bidder's ability to fund the Guaranteed Amount in full at closing and to assume any liabilities for obligations proposed to be assumed from and after the Closing; (c) complete and execute a confidentiality agreement acceptable to Debtor and its professionals in consultation with Wells Fargo and counsel to the Committee; and (d) provide an earnest money deposit equal to ten percent (10%) of the Guaranteed Amount (a "**Deposit**").

Deposits shall be in the form of a wire transfer to the account of an escrow agent selected by Debtor (the "**Escrow Agent**"), pursuant to instructions to be provided upon request. All Deposits for Bids shall be deposited in an escrow account under an escrow agreement with the Escrow Agent, and shall be returned pursuant to the terms of the escrow agreement.

Any Deposit, together with any interest earned thereon, shall be returned to any Bidder whose Bid is not accepted by Debtor within three business days of the conclusion of the Sale Hearing, except that in the case of the party (or parties) who submits the Second Place Bid (as such term is defined below) Debtor reserves the right to retain such deposit until three days after the transactions with the Winning Bidder (as such term is defined below) has been consummated. If the Winning Bidder fails to consummate the purchase of the Assets, and such failure to consummate the purchase is the result of a breach by the Winning Bidder, the Winning Bidder's Deposit shall be forfeited to Debtor and Debtor specifically reserves the right to seek all available damages from the defaulting offeror.

To be considered a Bid, a bid must (a) identify the Assets to which it relates; (b) state the Guaranteed Amount to be paid for the Assets; (c) state any non-cash consideration to be paid for the Assets and provide information concerning such non-cash consideration to permit Debtor to accurately assess the value thereof; (d) identify each and every executory contract or unexpired lease, the assumption and assignment of which is a condition to closing; (e) identify pre-petition liabilities to be assumed or paid and the manner and timing of such assumption and/or payment; (f) provide sufficient indicia that such bidder or its representative is legally empowered, by power of attorney or otherwise, (i) to bid on behalf of the prospective bidder and (ii) to complete and sign, on behalf of the bidder, a binding and enforceable agreement to purchase the Assets; (g) not contain any contingencies to closing, including, without limitation, contingencies for financing, diligence, board approval, or similar contingencies or condition; (h) fully disclose the identity of entities, if any, which shall be acquiring directly or indirectly a portion of the Assets under or in connection with a Bid; and (i) include a definitive closing date no later than March 30, 2010.

Bids submitted on or prior to the Bidding Deadline as modified by a Bidder at the Auction shall remain open and irrevocable until the Sale Hearing; provided, however, that the Winning Bid and the Second Place Bid shall be deemed to remain open and irrevocable until the closing of a transaction with respect to the Assets that are the subject of such Bid or further Order of the Court (except as otherwise may be set forth in the Agreements with Hudson). Acceptance of a Bid shall, in all respects, be subject to entry

4

of an order by the Court that, among other things, authorizes Debtor to close a sale to the Winning Bidder. Following the Sale Hearing, if any Winning Bidder (as the case may be) fails to consummate an approved sale because of a breach or failure to perform on its part, the next highest or otherwise best Qualified Bid, as disclosed at the Auction (the "**Second Place Bid**"), shall be deemed to be the Winning Bid, and Debtor shall be authorized, but not required, to consummate the Sale with the Bidder submitting such Bid (i) without the need for further notice or order of the Court and (ii) without prejudice to Debtor's right to seek all available damages from the defaulting Winning Bidder.

4. The Auction and Selection of the Winning Bid

If, in addition to the Bid of Hudson as embodied in the Agreements, one or more Qualified Bids are received by the Bidding Deadline, the Auction will be conducted at the offices of Alston & Bird LLP, 1180 West Peachtree Street, Fifteenth Floor, Atlanta, Georgia 30319, or at another location as may be timely disclosed by Debtor to Qualified Bidders, on or about 10:00 a.m. on March 25, 2010 (the "**Auction Date**").

If, however, the only Bid received by the Bidding Deadline (unless Debtor has extended such deadline in accordance with the terms hereof) is the bid embodied in the Agreements with Hudson, then the Auction will not be held and Hudson will be deemed the Winning Bidder for the Assets, and Debtor will seek approval thereof at the Sale Hearing.

In the event there is an Auction, all bidders must appear in person or through a duly authorized representative. At or prior to the commencement of the Auction, Debtor will notify all Qualified Bidders of the then highest and best Qualified Bid for the Assets as received by that time.

If more than one Bid is submitted, each such bidder shall have the right to continue to improve its Bid at the Auction. The procedures and the manner in which the Auction will proceed shall be determined by Debtor and CTG in consultation with Wells Fargo and counsel to the Committee (unless inconsistent with the terms of the Agreements). Qualified Bidders will be notified of such procedures prior to the beginning of the Auction.

The initial minimum Bid at the Auction for the Assets must provide for a Guaranteed Amount equal to at least (i) the Guaranteed Amount stated in the Hudson Bid; (ii) the Breakup Fee; and (iii) an initial overbid equal to $20,000 (the "**Initial Minimum Overbid**"). Subsequent Bids after the Initial Minimum Overbid must be in increments of no less than $100,000 (a "**Subsequent Overbid**"). Debtor and CTG in consultation with Wells Fargo and counsel to the Committee may alter the bidding increments for any Subsequent Overbid at any time.

The Auction will continue in one or more rounds of bidding and shall conclude after each participating bidder has had an opportunity to submit an additional Subsequent Overbid, after being advised of the then highest bid and the identity of the party making

5

such next highest bid. Unless otherwise agreed by Debtor and Hudson, the Auction shall run continuously until completed.

Debtor further reserves the right, in consultation with Wells Fargo and counsel to the Committee, to (a) amend and/or impose additional terms and/or conditions at or prior to the Auction that they believe will better promote the goals of the Auction and do not otherwise conflict with the terms and requirements set forth in the Agreements and (b) subject to the terms of the Agreements, extend the deadlines set forth in the Bidding Procedures and/or adjourn the Auction at the Auction and/or the Sale Hearing in open court or on the Court's calendar on the date scheduled for said hearing without further notice to creditors or parties-in-interest.

At the conclusion of the Auction, (i) the highest or otherwise best bids for the Assets (whether (A) the highest or otherwise best bid for the Assets or (B) a combination of highest or otherwise best bids for certain Assets (taking into consideration Debtor's reasonable estimate of net realizable short term value for all Assets which would not be purchased by the bids considered in this clause B) (whether one or more, the "**Winning Bid**"), and (ii) the Second Place Bid shall in each case be determined by Debtor in consultation with Wells Fargo and counsel to the Committee. Debtor and the entity (or entities) that made the Winning Bid (each, a "**Winning Bidder**") will enter into definitive agreements (which are subject to Court approval) before the Auction is adjourned. In selecting the Winning Bid(s), Debtor will take into consideration, among other things, a bid's financial and contractual terms and the factors relevant to the sale process and the best interests of Debtor's estates and creditors, including, without limitation, those factors affecting the speed and certainty of consummating a Sale Transaction, as well as the Debtor's liability, if any, for payment of the Breakup Fee.

Subject to the foregoing, any party may appear and be heard as to what bid(s) is the highest and best bid(s) for the Assets.

5. Supplement

To the extent that Hudson's bid embodied in the Agreements is not the Winning Bid at the Auction, Debtor will file with the Court a supplement (the "**Supplement**") that will inform the Court of the results of the Auction and the Winning Bid and the Second Place Bid (if any). The Supplement will identify, among other things, the proposed purchaser(s) of the Assets and the consideration to be paid by such purchaser for the Assets. In addition, Debtor will attach to the Supplement, as exhibits, (a) any revised proposed order approving the Sale and (b) copies of the Agreements entered into by Debtor and the Winning Bidder(s). Debtor will file and serve the Supplement as promptly as is reasonably practicable prior to the Sale Hearing.

Debtor will serve the Supplement in accordance with the notice procedures adopted in this chapter 11 case and, in any event, to any person who submits a written request therefor to Alston & Bird LLP, Wendy R. Reiss, 1201 West Peachtree Street, Atlanta, Georgia 30309, (wendy.reiss@alston.com).

6

6. Objections

Objections to the relief requested in the Motion of the Debtor for an order (A)(I) approving the sale procedures and bidding protections to be employed in connection with the proposed sale of substantially all of Debtor's assets pursuant to Section 363 of the United States Bankruptcy Code, (II) scheduling an auction and hearing to consider approval of the Sale of the Assets to Hudson Capital Partners, LLC, or such other purchaser(s) providing a higher or otherwise better offer for any or all of the Assets; (III) approving notice of the respective dates, times, and places for an auction and for the hearing on approval of the Sale (the relief requested in such items (A)(I) through (III) is collectively referred to in the Motion as the "**Initial Relief**") relating to the issues to be addressed at the Sale Hearing, must be in writing and filed and served so as to be actually received on or before 5:00 p.m. on March 22, 2010, by counsel to Debtor, Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, Georgia 30309 attention: Wendy R. Reiss (wendy.reiss@alston.com), counsel to Wells Fargo, Parker Hudson Rainer & Dobbs LLP, 285 Peachtree Center Avenue, NE, 1500 Marquis Two, Atlanta, GA 30303 attention: James S. Rankin (jsr@phrd.com) and counsel to the Committee [_____], and counsel to Hudson, Scroggins & Williamson, P.C., 1500 Candler Building, 127 Peachtree Street, Atlanta, Georgia 30303 attention: J. Hayden Kepner, Jr. (hkepner@swlawfirm.com).

7. Court Approval

A hearing on all the remaining relief requested in the Motion and to consider the results of the Auction (the "**Sale Hearing**") will be held before the Honorable C. Ray Mullins, United States Bankruptcy Court Judge, at the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, 75 Spring Street Southwest, Atlanta, Georgia, 30303, on March 29, 2010 at 9:30 a.m.  The Sale will be subject to the entry of an order of the Court approving same.

## **SCHEDULE 1**

| Creditor | Jurisdiction | File Number | Filing Date | Collateral |
|---|---|---|---|---|
| BB&T Equipment Finance<br>Attn: Tom Jaschik, CEO<br>5130 Parkway Plaza Blvd.<br>Charlotte, NC 28217 | Fulton County, Georgia | 060-2008-002837 | 3/13/2008 | Specific equipment (computer hardware and software) |
| BB&T Equipment Finance<br>Attn: Tom Jaschik, CEO<br>5130 Parkway Plaza Blvd.<br>Charlotte, NC 28217 | Fulton County, Georgia | 060-2008-002838 | 3/13/2008 | Specific equipment (computer hardware and software) |
| BB&T Equipment Finance<br>Attn: Tom Jaschik, CEO<br>5130 Parkway Plaza Blvd.<br>Charlotte, NC 28217 | Fulton County, Georgia | 060-2005-011356 | 9/12/2005 | Specific equipment |
| BB&T Equipment Finance<br>Attn: Tom Jaschik, CEO<br>5130 Parkway Plaza Blvd.<br>Charlotte, NC 28217 | Fulton County, Georgia | 060-2005-013340 | 10/24/2005 | Specific equipment |
| Dell Financial Services L.P.<br>Attn: Michael Dell, CEO<br>12234 N. IH-35<br>Bldg. B<br>Austin, TX 78753<br><br>Dell Financial Services L.P.<br>c/o Corporation Service Company, Registered Agent<br>40 Technology Pkwy South #300<br>Norcross, GA 30092 | Cobb County, Georgia | 033-2007-007614 | 8/6/2007 | Specific equipment (computer equipment) |
| Evans National Leasing, Inc.<br>Attn: John Gallo, President<br>One Grimsby Drive<br>Hamburg, NY 14075 | Delaware Secretary of State | 5353531 8 | 11/15/2005 | Specific equipment |
| Evans National Leasing, Inc.<br>Attn: John Gallo, President<br>One Grimsby Drive<br>Hamburg, NY 14075 | Delaware Secretary of State | 5353555 7 | 11/15/2005 | Specific equipment |
| Financial Pacific Leasing, LLC<br>Attn: Paul Menzel, CEO<br>P.O. Box 4568<br>Federal Way, WA 98063-4568<br><br>Assigned to: Wells Fargo Bank N.A.<br>Attn: Carrie Tolstedt, CEO<br>MAC N9311-161 Sixth and Marque<br>Minneapolis, MN 55479 | Barrow County, Georgia | 007-2005-017861 | 12/2/2005 | Specific equipment |
| General Electric Capital Corporation<br>Attn: Michael Neal, CEO<br>10 Riverview Drive<br>Danbury, CT 06810 | Delaware Secretary of State | 2007 0939024 | 3/8/2007 | Specific equipment |

| Creditor | Jurisdiction | File Number | Filing Date | Collateral |
|---|---|---|---|---|
| Heritage Pacific Leasing<br>Attn: John Otto, CEO<br>3439 W. Shaw Ave.<br>Fresno, CA 93711-3204 | Delaware Secretary of State | 4311682 1 | 10/29/04 (amendment filed on 1/26/2005) | Specific Equipment |
| Heritage Pacific Leasing<br>Attn: John Otto, CEO<br>3439 W. Shaw Ave.<br>Fresno, CA 93711-3204 | Delaware Secretary of State | 4311684 7 | 10/29/04 (amendment filed on 11/18/04) | Specific equipment |
| Heritage Pacific Leasing<br>Attn: John Otto, CEO<br>3439 W. Shaw Ave.<br>Fresno, CA 93711-3204 | Delaware Secretary of State | 4311685 4 | 10/29/2004 | Specific equipment |
| Heritage Pacific Leasing<br>Attn: John Otto, CEO<br>3439 W. Shaw Ave.<br>Fresno, CA 93711-3204 | Delaware Secretary of State | 4311720 9 | 10/29/2004 (amendment filed on 12/6/04) | Specific equipment |
| Heritage Pacific Leasing<br>Attn: John Otto, CEO<br>3439 W. Shaw Ave.<br>Fresno, CA 93711-3204 | Fulton County, Georgia | 060-2004-014025 | 11/3/2004 (amendment filed on 1/31/05) | Specific equipment |
| Heritage Pacific Leasing<br>Attn: John Otto, CEO<br>3439 W. Shaw Ave.<br>Fresno, CA 93711-3204 | Fulton County, Georgia | 060-2004-014026 | 11/3/2004 (amendment filed on 11/22/04 to add equipment) | Specific equipment |
| Heritage Pacific Leasing<br>Attn: John Otto, CEO<br>3439 W. Shaw Ave.<br>Fresno, CA 93711-3204 | Fulton County, Georgia | 060-2004-014027 | 11/3/2004 (amendment filed on 12/7/04) | Specific equipment |
| Heritage Pacific Leasing<br>Attn: John Otto, CEO<br>3439 W. Shaw Ave.<br>Fresno, CA 93711-3204 | Fulton County, Georgia | 060-2005-001994 | 2/15/2005 (amendment filed on 3/7/05) | Specific equipment |
| LEAF Funding Inc<br>Attn: Crit Dement, CEO<br>1818 Market Street<br>9th Floor<br>Philadelphia, PA 19422 | Delaware Secretary of State | 2007 0341833 | 1/26/2007 | Specific equipment |
| LEAF Funding Inc<br>Attn: Crit Dement, CEO<br>1818 Market Street<br>9th Floor<br>Philadelphia, PA 19422 | Barrow County, Georgia | 007-2007-024265 | 11/29/2007 | Specific equipment |
| Royal Bank America Leasing<br>550 Township Line Road<br>Suite 425<br>Blue Bell, PA 19422 | Delaware Secretary of State | 6367637 6 | 10/3/2006 | Specific equipment |
| Royal Bank America Leasing<br>550 Township Line Road<br>Suite 425<br>Blue Bell, PA 19422 | Delaware Secretary of State | 6394981 5 | 10/26/2006 | Specific equipment |

| Creditor | Jurisdiction | File Number | Filing Date | Collateral |
|---|---|---|---|---|
| Susquehanna Commercial Finance, Inc.<br>Attn: Kenneth R. Collins, Jr., CEO<br>1566 Medical Drive<br>Suite 201<br>Pottstown, PA 19464 | Delaware Secretary of State | 2007 0446251 | 2/1/2007 | Specific equipment |
| The Leasing Experts, Inc.<br>Attn: Ginny Estape, Director of Operations<br>9000 S.W. 152nd St.<br>Suite 206<br>Miami, FL 33157<br><br>Mainstreet Bank<br>Attn: Tom Depping, CEO<br>23970 U.S. Hwy. 59 N<br>Kingwood, TX 77339 | Barrow County, Georgia | 007-2006-005492 | 3/31/2006 | Specific equipment |
| US Bancorp<br>Attn: Richard Davis, CEO<br>U.S. Bancorp Center<br>800 Nicollet Mall<br>Minneapolis, MN 55402 | Barrow County, Georgia | 007-2004-015162 | 11/5/2004 | Specific equipment |

- 3 -