IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SWOOZIE'S, INC.,[1] | ) | Case No. 10-66316-CRM |
| | ) | |
| Debtor. | ) | |

### DEBTOR'S APPLICATION FOR ORDER APPROVING THE EMPLOYMENT OF CLEAR THINKING GROUP LLC AS FINANCIAL ADVISOR TO DEBTOR PURSUANT TO SECTIONS 327(a) AND 363 OF THE BANKRUPTCY CODE

Swoozie's, Inc., a Delaware corporation ("**Debtor**"), hereby files this application (the "**Application**") for entry of an Order pursuant to Sections 327(a) and 363 of Title 11 of the United States Code (the "**Bankruptcy Code**"), approving Debtor's agreement with Clear Thinking Group LLC ("**CTG**") and appointing CTG as Debtor's Financial Advisor. In support of the Application, Debtor relies upon and incorporates by reference the Affidavit of Lee Diercks, Partner of the Clear Thinking Group LLC in Support of the Application for Order Approving the Employment of Clear Thinking Group LLC as Financial Advisor to Debtor, annexed hereto as <u>Exhibit A</u> (the "**Diercks Affidavit**"). In further support of this Application, Debtor respectfully represent as follows:

### I.    JURISDICTION

1.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]  The last four digits of Debtor's taxpayer identification number are 5738 and Debtor's mailing address is 80 W. Wieuca Road, Suite 302, Atlanta, GA 30342.

2.      The statutory predicates for the relief sought herein are Sections 327(a) and 363 of the Bankruptcy Code.

II.    **GENERAL BACKGROUND**

3.      On March 2, 2010 (the "**Petition Date**"), Debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code. Debtor is authorized to operate its business and manage its properties as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

A.      **Debtor's Business**

4.      Debtor is a specialty retailer focusing on the art of giving, home entertaining, and life celebrations. Debtor offers a broad combination of products and services ranging from invitations and custom printing to housewares and party goods. Founded in 1999 and based in Atlanta, Georgia, Debtor employs 350 employees in 43 stores and a corporate headquarters. Debtor opened its first store in February 2001 and now operates stores in 14 states across the Southeast, Northeast, Texas and California.

B.      **Events Leading to Chapter 11**

5.      There are three major contributing factors to Debtor's lowered sales results. First, in February 2009, Debtor entered the Northeast market through its purchase of 13 Blue Tulip stores, a chain of stores specializing in similar gift and social stationery consumer segments, out of bankruptcy. The impact of Blue Tulip's liquidation sale and the stores going "dark" for one month prior to the grand opening of the Swoozie's brand in the previous Blue Tulip locations had a deeper impact on customer retention than was anticipated. The assumptions for Debtor's 2009 sales plan predicted that sales in the Northeast would reach an estimated $12.8 million; however, actual

- 2 -

resulting sales figures were approximately $8.5 million, missing the target numbers by over $4 million.

6.      Second, around the same time as Debtor's purchase of the Blue Tulip stores, there was a seismic shift in the economy which was especially felt in Debtor's industry.  Consumer behavior drastically changed as consumers pulled back on spending associated with paper, invitations, party goods, life celebrations, and home accessories. Debtor's industry as a whole has been affected by the changing economic climate and resulting changes in consumer behavior.  By way of example, as of December 2009, sales for manufacturers of paper and invitations were off target by approximately 28 percent nationwide and approximately 35 percent in the Northeast.

7.      Finally, in the second quarter of 2009, Debtor had the opportunity to improve its sales figures as new categories of products were tested to offset the decline in consumer desire for paper and invitations, and those new products performed exceptionally well.  However, to realize the opportunity for growth, Debtor required capital and, accordingly, sought a loan from a number of sources, including Wells Fargo Capital Finance ("**Wells Fargo**").

8.      Debtor and Wells Fargo were in the process of closing the loan in the third quarter of 2009 when a number of negative converging factors, the most notable of which was the loss of Debtor's Chief Financial Officer and Chief Operating Officer (the "**CFO/COO**"), which delayed the closing of the loan.  Due to this delay, and the loss of Debtor's CFO/COO, Debtor operated without a CFO/COO from July 2009 through November 2009 and was not able to properly keep control of its inventory and related business finances.  Furthermore, because the capital infusion was delayed, Debtor was

unable to purchase new inventory or timely pay its vendors for delivered product. As a result, Debtor's sales missed targets by $2.2 million.

9.      While Debtor did eventually close the loan with Wells Fargo in October 2009, the damage associated with the delay was irreparable. Debtor's inability to react to trends, aging inventory, and delayed holiday set-up of over four weeks resulted in Debtor's worst performance in its history.

10.     Given its losses in the third and fourth quarters of 2009, combined with the uncertainty facing the U.S. economy and the lack of consumer spending, Debtor cannot sustain further projected losses. In order to maximize return to all creditors through a sale, whether as a going-concern or through an orderly liquidation, Debtor decided to file the instant Chapter 11 case.

11.     Additional information about Debtor's business and the events leading up to the commencement of Debtor's bankruptcy case (the "**Bankruptcy Case**") can be found in the Declaration of Kelly Plank-Dworkin in Support of Chapter 11 Petition and First Day Motions ("**Plank-Dworkin Declaration**") which is incorporated herein by reference.

C.      **Facts in Support of Requested Relief**

12.     Prior to the Petition Date, Debtor experienced, and continues to experience, financial difficulties, which difficulties have culminated in the filing of this Chapter 11 case. Debtor has determined, in the exercise of its business judgment, that the size of its business operations and the liquidation of the same, and the complexity of the financial difficulties attendant upon operations and liquidation of such scope, require it to employ an experienced financial advisor. Thus, on February 22, 2010, Debtor executed

- 4 -

an engagement letter with CTG (the "**CTG Agreement**"), a copy of which is annexed hereto as Exhibit B.

13.     Debtor has selected CTG as its financial advisor because of CTG's diverse experience, knowledge, and reputation in the retail restructuring and turnaround field; its understanding of the issues involved in Chapter 11 cases; and Debtor believes that CTG possesses the resources and is well-qualified to provide the financial advisory services that will be required.  CTG is a leading advisor to companies as well as creditors in large, complex, and high-profile restructurings, liquidations, and bankruptcies.

14.     Established in 2001, CTG has advised companies and creditors in numerous distressed situations, both in and out of bankruptcy proceedings.  CTG's clients include companies, creditors, corporate parents, and financial sponsors, as well as acquirers of troubled assets.  CTG and/or its Principals have participated in many restructurings, turnarounds, and liquidations for retail clients, including One Price Clothing, Inc., Jumbo Sports, Inc.,  Flooring America, Inc., Texas Boot, Inc., Market Antiques & Home Furnishings, Inc., Prints Plus, Inc., Copeland Sports, Inc., Sofa Express, Inc., Lillian Vernon, Inc., Joe's Sports & Outdoors, Inc., Barbeques Galore, Inc., The Parent Company, Inc., Bachrach, Inc., Crabtree & Evelyn, Inc., and The Walking Company, Inc. CTG has a wealth of experience in providing services in retail Chapter 11 cases and has an excellent reputation as a result of the many years of quality services it has rendered on behalf of debtors throughout the United States.

15.     Since late December 2009, CTG has developed extensive knowledge of Debtor's business, operations, and financial condition. CTG was originally retained on December 23, 2009, to assist the Debtor with cash flow and cash management issues. On

February 22, 2010, the Debtor amended CTG's scope to serve as its financial advisor in connection with its Chapter 11 Case and its sale efforts.

16.    The following CTG professionals will be responsible for providing professional services to Debtor: Partner Lee Diercks will oversee the overall engagement, Managing Director Alan Minker will be responsible for the day-to-day management of the assignment, and other personnel resources will be provided as required during the assignment, as agreed by Debtor and CTG prior to utilization.   To date, CTG has provided, and/or will provide on a going-forward basis upon the Court's approval of this Application, the following services:[2]

(a)    assisting Debtor in preparation of all necessary schedules and budgets prior to the filing of its Chapter 11 petition, as appropriate;

(b)    assisting Debtor in negotiations for DIP financing;

(c)    actively leading and managing the Chapter 11 bankruptcy case on behalf of Debtor;

(d)    assisting Debtor with the preparation of the necessary schedules, budgets, and court-related reporting;

(e)    assisting Debtor with the sale of assets as required by Debtor;

(f)    providing Debtor with Expert Witness Testimony, as required during the case; and

(g)    assisting Debtor with all other agreed upon tasks, as required by Debtor.

17.    Per the CTG Agreement, fees for services will be based upon the time devoted on Debtor's behalf and the experience of those providing the services.   CTG will be billed at standard hourly rates as follows:

---

[2]  To the extent that there is any conflict between the terms of the CTG Agreement and any description of it in this Motion, the terms of the CTG Agreement shall govern.

|                    |          |
|--------------------|----------|
| Partner            | $400.00  |
| Managing Director  | $325.00  |
| Manager            | $275.00  |
| Senior Consultant  | $225.00  |
| Consultant         | $175.00  |
| Analyst            | $125.00  |

18.    In addition to the above fees, Debtor shall further reimburse CTG, pursuant to the CTG Agreement, for all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel, lodging, postage, telephone, courier services, copying, conference calls, and facsimile charges.  Debtor will also pay for all legal expenses associated with CTG's retention, approval by the Court, and all other legal requirements and actions regarding this bankruptcy case.

19.    The fees described above are consistent with CTG's normal and customary billing practices for cases of this size and complexity, which require the level and scope of services outlined in the CTG Agreement.

20.    CTG has provided certain financial advisory services to Debtor since the execution of the initial CTG Agreement on December 23, 2009.  Per the CTG Agreement, Debtor agreed to pay CTG for all prepetition services provided, at the above hourly rates, and pay for all prepetition expenses incurred prior to filing its petition in Bankruptcy Court.  To date, CTG has received approximately $91,086.00 for financial advisory services rendered.  Prior to the Petition Date, CTG also received a retainer of $75,000 for the postpetition services to be provided.  If there are any funds remaining from the postpetition retainer, these funds will be promptly returned to Debtor at the end of the bankruptcy case.

## III.  **RELIEF REQUESTED**

21.    By this Application, Debtor seeks authorization to employ CTG as Debtor's financial advisor in connection with Debtor's Chapter 11 case pursuant to the terms and conditions of the CTG Agreement, with the cost of such services to be paid from Debtor's estate as contemplated by 28 U.S.C. § 156(c).

## IV.  **BASIS FOR RELIEF**

22.    Under Section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under this title." 11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code modifies Sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code, providing that "a person is not disqualified for employment under Section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of Debtor before the commencement of the case." 11 U.S.C. § 1107(b).  Under Section 328(a) of the Bankruptcy Code, a debtor in possession may employ professional persons under section 327(a) of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

23.    As required by Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), this Application has set forth above: (a) the specific facts showing the necessity for CTG's employment; (b) the reasons for Debtor's selection of CTG as its financial advisor in connection with its Chapter 11 case; (c) the professional services to be provided by CTG; and (d) the arrangement between Debtor

and CTG with respect to CTG's compensation. The extent of CTG's connections, if any, to certain parties in interest in this matter, to the best of Debtor's knowledge, is set forth below.

## V.    CTG'S DISINTERESTEDNESS

24.    CTG has informed Debtor that, except as qualified in the Diercks Affidavit annexed to this Application as Exhibit A, CTG has no material connection with Debtor, its creditors, any other party in interest, its respective attorneys and accountants, the United States Trustee for the Northern District of Georgia (the "**U.S. Trustee**"), or any person employed in the office of the U.S. Trustee in the above-captioned Chapter 11 case.

25.    Based on the Diercks Affidavit, Debtor believes that CTG (i) does not hold or represent any interest adverse to Debtor or its estate and (ii) is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code. Moreover, Debtor believes that employment of CTG is necessary and in the best interest of Debtor and its estate.

## VI.    NOTICE

26.    Notice of this Motion has been given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Northern District of Georgia; (b) Debtor's forty (40) largest unsecured creditors; (c) Wells Fargo Business Credit, LLC, and Wells Fargo Bank, N.A., Debtor's prepetition senior secured lender and proposed postpetition lender; (d) Crane & Co., Inc., the Debtor's prepetition second lien lender; and (e) the Internal Revenue Service. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

VII.    **CONCLUSION**

WHEREFORE, Debtor respectfully requests that the Court enter an order granting (a) the relief requested herein that is substantially in the form annexed hereto as Exhibit C, and (b) such other and further relief to Debtor as the Court may deem proper.

Respectfully submitted this 4th day of March, 2010.

ALSTON & BIRD LLP

/s/ Wendy R. Reiss
Dennis J. Connolly (Bar No. 182275)
Wendy R. Reiss (Bar No.600295)
Sage M. Sigler (Bar No. 300707)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Proposed Attorneys for Debtor*

**EXHIBIT A**

**Diercks Affidavit**

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SWOOZIE'S, INC.,[1] | ) | Case No. 10-66316 |
| | ) | |
| Debtor. | ) | |

**AFFIDAVIT OF LEE DIERCKS IN SUPPORT OF DEBTOR'S APPLICATION
FOR ORDER APPROVING THE EMPLOYMENT OF CLEAR THINKING
GROUP LLC AS FINANCIAL ADVISOR TO DEBTOR PURSUANT TO
SECTIONS 327(a) AND 363 OF THE BANKRUPTCY CODE**

Personally appeared before the undersigned officer, duly authorized to administer oaths in the State of Georgia, Lee Diercks, who after being duly sworn, deposes and states as follows:

1.      I am a Partner with the Clear Thinking Group LLC ("**CTG**"), a consulting firm that that specializes in corporate restructuring; sell-side advisory services; operations improvement; litigation analytics; valuations; and case management services and maintains its corporate office at 401 Towne Centre Drive, Hillsborough, New Jersey 08844.  I have read the Application for an Order Pursuant to Sections 327(a) and 363 of the Bankruptcy Code Authorizing the Employment of Clear Thinking Group LLC as Financial Advisor to Debtor, Swoozie's, Inc., and submit this affidavit in support thereof.

**CTG'S QUALIFICATIONS**

2.      CTG is recognized for its expertise in providing financial advisory services in financially distressed situations, including advising debtors, creditors, and other constituents in Chapter 11 proceedings..

---

[1]  The last four digits of Debtor's taxpayer identification number are 5738 and Debtor's mailing address is 80 W. Wieuca Road, Suite 302, Atlanta, GA 30342.

3.     I have considerable experience with Chapter 11 restructuring and other
distressed company circumstances, advising both debtors and creditors.  Retail advisory
assignments in which CTG and/or I have been actively involved include, among others,
One Price Clothing, Inc., Jumbo Sports, Inc., Flooring America, Inc., Texas Boot, Inc.,
Market Antiques & Home Furnishings, Inc., Prints Plus, Inc., Copeland Sports, Inc.,
Sofa Express, Inc.,  Lillian Vernon, Inc., Joe's Sports & Outdoors, Inc., Barbeques
Galore, Inc., The Parent Company, Inc., Bachrach, Inc., Crabtree & Evelyn, Inc., and
The Walking Company, Inc.

4.     My duties as Partner with respect to CTG's engagement to represent
Debtor include, among other things, strategic advice; advice on possible sale and
liquidation options; participation in negotiations among Debtor and its creditors,
suppliers, and other parties in interest; financial budget preparation; assistance to Debtor
in reviewing the terms, conditions, and impact of any proposed liquidation; and
participation in presentations to Debtor's prepetition and postpetition secured lenders.

5.     As described in the Application, since December 23, 2009, CTG has
rendered financial advisory services to Debtor in connection with its restructuring efforts.
CTG has become familiar with Debtor's operations and is well qualified to advise Debtor in
connection with such financial restructuring and liquidation matters in a cost-effective and
efficient manner.

### DISINTERESTEDNESS OF PROFESSIONALS

6.     Based on the results of the conflict search conducted to date by
CTG's compliance department, as described more fully below, and based on my
understanding of Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the

- 2 -

practices being followed in other large Chapter 11 cases, to the best of my knowledge, neither I, CTG, nor any member or employee thereof, insofar as I have been able to ascertain, has any connection with Debtor, its creditors, other parties in interest (as reasonably known to us), its attorneys, the U.S. Trustee, or any person employed in the Office of the U.S. Trustee, except as disclosed or otherwise described herein.

7.      To the best of my knowledge, CTG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

8.      As part of its diverse practice, CTG appears in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of which may represent claimants and parties in interest in the Chapter 11 case. Further, CTG, or companies in which it has invested, in the past and may in the future, be represented by several attorneys and law firms in the legal community, some of whom may be involved in this proceeding. In addition, CTG has in the past and will likely in the future be working with or against other professionals involved in this case in matters unrelated to Debtor or this Chapter 11 case. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to Debtor herein in matters upon which CTG is to be employed.

9.      CTG has represented, and will in the future represent, many different clients with various business interests in numerous industries. These clients are often referred to CTG by intermediaries such as lawyers, investment bankers, private equity

firms, lenders, and accountants.  However, out of an abundance of caution, CTG makes the following disclosures regarding Wells Fargo's various companies:

     a.     Wells Fargo Retail Finance (WFRF) – CTG has performed work for other borrowers of Wells Fargo Retail Finance that are unrelated to this case and has provided financial advisory services to WFRF in other unrelated bankruptcy cases.

     b.     Wells Fargo Trade Capital – CTG has performed work for borrowers of Wells Fargo Trade Capital unrelated to this case and has provided financial advisory services directly to Wells Fargo Trade Capital in other unrelated assignments.

     c.     Wells Fargo Foothill - CTG has performed work for borrowers of Wells Fargo Foothill unrelated to this case and has provided financial advisory services directly to Wells Fargo Foothill in other unrelated assignments.

     d.     Wells Fargo Business Credit - CTG has performed work for borrowers of Wells Fargo Business Credit unrelated to this case and has provided financial advisory services directly to Wells Fargo Business Credit in other unrelated assignments.

     e.     CTG also provided advisory services to Wells Fargo Business Credit in July of 2009 as part of WFBC's loan review process for Swoozie's.  CTG reviewed Swoozie's business plan and provided an opinion to WFBC on the viability of Swoozie's business plan.

- 4 -

CTG agrees to update the disclosure information from time to time if and when additional parties with an interest in or a relationship with Debtor are identified by Debtor, in writing, to CTG.  CTG has undertaken a thorough review of its computerized database that contains the names of clients and other parties of interest with respect to certain matters.  CTG has run the following parties through its conflicts system:  (a) Debtor, (b) Debtor's current officers and directors, (c) Debtor's secured lenders, and (d) Debtor's forty (40) largest unsecured creditors.  CTG's investigation has not revealed any actual or potential conflicts of interest with respect to CTG's proposed representation of Debtor, except as described herein.

10.    CTG is confident that: (a) it has not represented, does not represent, and will not represent any parties in interest in connection with this Chapter 11 case; and (b) any relationship it may have with any party in interest will not interfere with or impair CTG's representation of Debtor in this Chapter 11 case.  If this Court approves the proposed employment of CTG by Debtor, CTG will not accept any engagement or perform any services for any entity or person other than Debtor in this situation.

## PROFESSIONAL SERVICES TO BE RENDERED AND COMPENSATION

11.    The parties have entered into an agreement that would govern the relationship between CTG and Debtor, a copy of which is attached as Exhibit B to the Application (the "**CTG Agreement**").  CTG has provided, and/or will provide upon the Court's approval of the Application, such financial advisory services (the "**Financial Advisory Services**") as CTG and Debtor shall deem appropriate and feasible in order to advise Debtor in the course of the Chapter 11 case, including, but not limited to, the following:

- 5 -

(a)     assisting Debtor in preparation of all necessary schedules and budgets prior to the filing of its Chapter 11 petition, as appropriate;

(b)     assisting Debtor in negotiations for DIP financing;

(c)     actively leading and managing the Chapter 11 bankruptcy case on behalf of Debtor;

(d)     assisting Debtor with the preparation of the necessary schedules, budgets, and court related reporting;

(e)     assisting Debtor with the sale of assets, as required by Debtor;

(f)     providing Debtor with Expert Witness Testimony, as required during the case; and

(g)     assisting Debtor with all other agreed upon tasks, as required by Debtor.

12.     The Financial Advisory Services that CTG will provide to Debtor are necessary to enable Debtor to maximize the value of its estate and to sell or liquidate its assets successfully.

13.     Per the CTG Agreement, fees for services will be based upon the time devoted on Debtor's behalf and the experience of those providing the services. CTG will bill at standard hourly rates as follows:

| Partner | $400.00 |
| Managing Director | $325.00 |
| Manager | $275.00 |
| Senior Consultant | $225.00 |
| Consultant | $175.00 |
| Analyst | $125.00 |

14.     In addition to the above fees, Debtor shall further reimburse CTG, pursuant to the CTG Agreement, for all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel, lodging, postage, telephone, courier services, copying, conference calls, and facsimile charges. Debtor will also pay for all legal expenses associated with CTG's retention and approval by the Court and all other legal requirements and actions regarding this bankruptcy case.

- 6 -

16.    The fees described above are consistent with CTG's normal and customary billing practices for cases of this size and complexity, which require the level and scope of services outlined in the CTG Agreement.

17.    CTG has provided certain financial advisory services to Debtor since February 22, 2010, and has been paid for those services on a monthly basis in accordance with the CTG Agreement.   To date, CTG has received approximately $91,086 for financial advisory services rendered prepetition.   Prior to the Petition Date, CTG also received a retainer of $75,000 for the services to be provided after the Petition Date. If there are any funds remaining from the retainer, these funds will be promptly returned to Debtor.

FURTHER AFFIANT SAYETH NOT.

_____
LEE DIERCKS

Sworn to and subscribed before me
this ___ day of March 2010.

_____
NOTARY PUBLIC

My Commission Expires:

**EXHIBIT B**
**CTG Agreement**



CLEAR
THINKING
GROUP

February 22nd, 2010

Ms. Kelly Plank Dworkin
Chief Executive Officer
Swoozie's, Inc.
80 West Wieuca Road, Suite 302
Atlanta, GA 30342

Re: <u>Financial Advisory Services – Supplemental Agreement</u>

Dear Kelly:

Clear Thinking Group LLC (CTG) is pleased that you have asked CTG to serve in the
role of Financial Advisor for Swoozies, Inc. ("Company") and its direct and indirect
subsidiaries (collectively, the "Debtors"), prior to and during their Chapter 11
case(s). This letter will confirm our discussion regarding the Debtors' engagement
of CTG and the terms on which CTG will provide these advisory services to the
Debtors.

The purpose of this letter is to establish our agreement with regard to the nature and
scope of our retention and to provide you and the Debtors with a summary of the
Debtors' obligations in connection with our retention. In this connection, CTG will
provide professional services as described hereinafter in this proposal in accordance
with applicable standards of the consulting, bankruptcy, and "turnaround"
professions. We understand fully that the US Bankruptcy Court must approve this
agreement prior to our retention after the bankruptcy petition is filed.

## 1.) SCOPE

CTG will act as the Debtors' Financial Advisor and help prepare the Debtor for a
Chapter 11 bankruptcy filing. Post filing CTG will act as the Debtors' Financial
Advisor and as such assist in leading the Debtors' Chapter 11 bankruptcy case. CTG
will provide the following services listed in Exhibit A – Scope of Work.

We will employ commercially reasonable efforts with the goal of obtaining results
that are agreeable to all parties involved, but we do not guaranty the results that are
to be achieved.

## 2.) RESOURCES PROVIDED

* Lee Diercks, Partner, will oversee the overall engagement.
* Alan Minker, Managing Director will be responsible for the day to day management of the assignment.
* Other resources, as required during the assignment. Debtors and CTG will agree to the necessary resources before they are utilized.

## 3.) FEES & EXPENSES

Fees for services will be based upon the time devoted on the Debtors' behalf and the experience of those providing the services. The Debtors' will provide all other resources required. The work will be billed at our standard hourly rates.

*Hourly Fees.* The engagement will be staffed with professionals at various levels, as the tasks require. Our fees will be based on the hours charged at our hourly rates, which currently are:

| | |
|---|---|
| Partner - | $400.00 |
| Managing Director - | $325.00 |
| Manager - | $275.00 |
| Sr. Consultant | $225.00 |
| Consultant - | $175.00 |
| Analyst - | $125.00 |

*Cash Expenses.* In addition to the fees set forth above, the Debtors shall pay directly, or reimburse CTG directly, for all reasonable out-of-pocket expenses incurred in connection with this assignment such as travel, lodging, postage, telephone, courier services, copying, conference calls, and facsimile charges. Debtors will also pay for all legal expenses associated with CTG's retention and approval by the Bankruptcy Court and all other legal requirements and actions regarding this bankruptcy case. All such billings will be in accordance with standard Bankruptcy Court practices.

*Payment.* The Debtors agree to pay CTG for all pre-petition services provided, at the above hourly rates, and pay for all pre-petition expenses incurred prior to filing their petition in bankruptcy court. Payment is to be by wire transfer.

Post Petition fees and expenses, CTG will provide monthly billing statements indicating hours, fees, and costs incurred, and their basis, in the amounts applied from retainers, and any current balance owed. Payment will be made per court ordered fee procedures.

*Post Petition Retainers.* CTG will require a retainer of $75,000 for post petition work. The post-petition retainer will be held by CTG until the conclusion of the case and will be applied to the final fee application.

## 4.) RELATION OF THE PARTIES.

The parties intend that an independent contractor relationship will be created by this agreement and neither party shall be considered an employee, agent or representative of the other. Employees or agents of CTG are not entitled to any of the benefits that the Debtors provide for the Debtors' employees. The Debtors also agree not to solicit, recruit or hire any employees or agents of CTG for a period of two years subsequent to the completion and/or termination of this agreement.

## 5.) CONFIDENTIALITY.

CTG agrees to keep confidential all information obtained from the Debtors. CTG agrees that neither it nor its directors, officers, principals, employees, agents or attorneys will disclose to any other person or entity, or use for any purpose other than specified herein, any information pertaining to the Debtors or any affiliate thereof which is either non-public, confidential or proprietary in nature ("Information") which it obtains or is given access to during the performance of the services provided hereunder. CTG may make reasonable disclosure of Information to third parties in connection with their performance of their obligations and assignments hereunder. In addition, CTG will have the right to disclose to others in the normal course of business its involvement with the Debtors.

Information includes data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models, or any work product relating to the business of the Debtors, its subsidiaries, distributors affiliates, vendors, customers, employees, contractors and consultants. The Debtors acknowledges that all advice (written or oral) given by CTG to the Debtors in connection with CTG's engagement is intended solely for the benefit and use of the Debtors (limited to its management) in considering the transactions to which it relates. The Debtors agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks and programs referred to herein without CTG's prior approval (which shall not be unreasonably withheld) except as required agents from by law. This agreement shall survive the termination of the engagement.

## 6.) INDEMNIFICATION.

Subject to Bankruptcy Court approval after filing a fee application on notice to the US Trustee, the Debtors agree to indemnify, hold harmless and defend us (including our

principals, employees and agents) against all claims, liabilities, losses, damages and reasonable expenses as they are incurred, including reasonable legal fees and disbursements of our counsel and the costs of our professional time (at our rates in effect when such future time is required) relating to or arising out of the engagement, including any legal proceeding in which we may be required or agree to participate but in which we are not a party. We, our principals, employees and agents, may, but are not required to, engage a single firm of separate counsel of our choice in connection with any of the matters to which this indemnification agreement relates. This indemnification agreement excludes acts or omissions by CTG due to any gross negligence, willful misconduct, breach of fiduciary duty, bad faith, and self-dealing.

## 7.) TERMINATION AND SURVIVAL.

This agreement may be terminated at any time by written notice by one party to the other, provided, however, that notwithstanding such termination CTG will be entitled to any fees and expenses due under the provisions of the agreement. Such payment obligations shall inure to the benefit of any successor or assignee of CTG. The obligations of the parties under the Indemnification and Confidentiality sections of this agreement shall survive the termination of the agreement as well as the other sections of this agreement, which expressly provide that they shall survive termination of this agreement.

## 8.) GOVERNING LAW.

This agreement is governed by and construed in accordance with the laws of the State of New Jersey with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof. In the event of any dispute arising between us, including any dispute with respect to this agreement, its interpretation, performance or breach, and are unable to agree on a mutually satisfactory resolution, either party may seek relief from the US bankruptcy court.

## 9.) LIMITATIONS.

This is a services engagement. CTG warrants that it will perform services hereunder in good faith and disclaims all other warranties. We will not be liable for any actions, damages, claims, liabilities, costs, expenses or losses arising out of or relating to the services performed hereunder for an aggregate amount in excess of the fees paid by the Debtors to CTG in performing the services that form the basis for the action or claim. In addition, we will not be liable for any delays resulting from circumstances or causes beyond our reasonable control, including without limitation, fire or other casualty, acts of God, strikes or labor disputes, war or other violence, or any law, order or required of any governmental agency or authority.

## 10.) SEVERABILITY.

If any portion of this agreement shall be determined to be invalid or unenforceable, we each agree that the remainder shall be valid and enforceable to the maximum extent possible.

## 11.) NOTICES

All notices required or permitted to be delivered under this agreement shall be in writing and sent, if to us, to the address set forth at the signature of this letter and, if to you, to:

Swoozie's, Inc.
80 West Wieuca Road, Suite 302
Atlanta, GA 30342
Attn: Ms. Kelly Plank Dworkin, CEO

All notices under this agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given upon actual receipt.

## 12.) ENTIRE AGREEMENT.

The Debtors agree that this agreement represents the entire understanding of the terms of our engagement and that it supersedes any prior understandings or agreements we may have had or discussed. The terms and provisions of this agreement may not be modified or amended except in a writing signed by an authorized representative of the Debtors and CTG.

If these terms meet with your approval, please sign and return the enclosed copy of this proposal to my attention.

Very truly yours,


Lee Diercks
Partner
Clear Thinking Group LLC
401 Towne Centre Drive
Hillsborough, NJ 08844


Accepted and Acknowledged:

Swoozies, Inc.
on behalf of itself and its subsidiaries

By: _Kelly Plank Dworkin_
    Kelly Plank Dworkin

Chief Executive Officer

Dated: February 22, 2010

## Exhibit A – Scope of Work

**Services to be performed:**
- CTG will assist Debtors in preparation of all necessary schedules and budgets prior to the filing of its Chapter 11 petition as appropriate.
- CTG will assist Debtors in negotiations for DIP financing.
- CTG will actively lead and manage the Chapter 11 bankruptcy case on behalf of the Debtors.
- CTG will assist Debtors with the preparation of the necessary schedules, budgets, and court related reporting.
- CTG will assist Debtors with the sale of assets as required by the Debtors.
- CTG will provide Debtors with Expert Witness Testimony as required during the case.
- CTG will assist Debtors with all other agreed upon tasks as required by the Debtors.

**EXHIBIT C**
**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SWOOZIE'S, INC.,[1] | ) | Case No. 10-66316-CRM |
| | ) | |
| Debtor. | ) | |

**ORDER APPROVING THE EMPLOYMENT OF CLEAR THINKING GROUP**
**LLC AS FINANCIAL ADVISOR TO DEBTOR PURSUANT TO**
**SECTIONS 327(a) AND 363 OF THE BANKRUPTCY CODE**

The Court has considered the application (the "**Application**") of Swoozie's, Inc.

("**Debtor**"), as debtor and debtor in possession in this proceeding, requesting the

authority to employ Clear Thinking Group LLC ("**CTG**") to act as financial advisors to

Debtor in this case filed pursuant to Chapter 11 of the United States Bankruptcy Code

(the "**Bankruptcy Code**").  This Court has jurisdiction over the Application and finds

---

[1]  The last four digits of Debtor's taxpayer identification number are 5738 and Debtor's mailing address is
80 W. Wieuca Road, Suite 302, Atlanta, GA 30342.

that notice of the Application is adequate, and that no further notice is necessary. The Court finds and concludes as follows:

Upon review of the Application and the representations from counsel at the March 29, 2010 hearing on the Application, the Court is satisfied that CTG represents no interest adverse to Debtor in the matters for which CTG is to be employed. The Court is further satisfied that CTG is disinterested within the meaning of Section 101(14) of the Bankruptcy Code, and that Debtor's employment of CTG is in the best interest of Debtor's estate. Accordingly it is hereby ORDERED:

1.      The Application is granted in its entirety.

2.      Debtor is authorized to retain CTG, its partners, managers, consultants, analysts, and administrative personnel as its financial advisors *nunc pro tunc* to the Petition Date.

3.      CTG shall be compensated in accordance with the procedures set forth in 11 U.S.C. §§ 330 and 331, applicable Rules, and any other order of this Court.

### *** END OF ORDER ***

Prepared and presented by:

ALSTON & BIRD LLP

_____
Dennis J. Connolly (Bar No. 182275)
Wendy R. Reiss (Bar No.600295)
Sage M. Sigler (Bar No. 300707)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Proposed Attorneys for Debtor*