**IT IS ORDERED as set forth below:**

**Date: March 22, 2010**

_C. Ray Mullins_

**C. Ray Mullins**
**U.S. Bankruptcy Court Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: | ) |
| | )     **Chapter 11** |
| | ) |
| | )     **Case No. 10-66316-CRM** |
| **SWOOZIE'S, INC.,** | ) |
| | ) |
|      **Debtor.** | ) |
| | ) |

### FINAL ORDER (1) AUTHORIZING DEBTOR-IN-POSSESSION TO OBTAIN FINANCING, GRANT SECURITY INTERESTS AND ACCORD PRIORITY STATUS PURSUANT TO 11 U.S.C. §§ 361, 364(c) AND 364(d) AND (2) MODIFYING AUTOMATIC STAY

This matter is before the Court on the emergency motion (the "**Motion**") of **SWOOZIE'S, INC.**, an entity organized under the laws of the State of Delaware, as debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "**Debtor**"), requesting entry of an order (1) authorizing Debtor to obtain financing and other extensions of credit from **WELLS FARGO BANK, NATIONAL ASSOCIATION** ("**Wells Fargo**") (Wells Fargo and its successors or assigns, in its capacity as postpetition lender, the "**DIP Lender**"), grant security

interests and liens and accord superpriority claim status in favor of DIP Lender pursuant to Sections 361, 364(c) and 364(d)(1) of Title 11 of the United States Code (the "**Bankruptcy Code**"); (2) giving notice of a final hearing pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2); and (3) modifying the automatic stay. Following an interim hearing on the Motion held on March 3, 2010, pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) (the "**Interim Hearing**"), the Court entered an Interim Order (1) Authorizing Debtor-in-Possession to Obtain Financing, Grant Security Interests and Accord Priority Status Pursuant to 11 U.S.C. §§ 361, 364(c) and 364(d); (2) Giving Notice of Final Hearing Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2); and (3) Modifying Automatic Stay (Doc. No. 26) (the "**Interim Order**").

Based upon the Court's review of the Motion and all matters brought to the Court's attention at the Interim Hearing and at the final hearing on the Motion, which was held on March 17, 2010 (the "**Final Hearing**"), and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law applicable to the financing sought by Debtor from DIP Lender (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

THE COURT HEREBY FINDS AND DETERMINES:

A.    <u>Petition Date</u>.  On March 2, 2010 (the "**Petition Date**"), Debtor filed with the Court its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and is continuing to manage its properties and to operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed herein.

B.    <u>Nature of Business</u>.    Debtor is engaged in the specialty gift and social paper retailing business online and through stores located in Alabama, California, Florida, Georgia, Illinois, North Carolina, South Carolina, Texas, and Tennessee.

C.    <u>Prepetition Loan</u>.    Debtor has acknowledged in the Motion or at the Interim Hearing that, as of the Petition Date, Debtor was indebted to Wells Fargo, in its capacity as Debtor's prepetition lender (in such capacity, the **"Prepetition Lender"**) in the approximate aggregate amount of approximately $3.1 million[1] (collectively, such amounts with all interest, attorneys' fees, other fees, costs, expenses and other amounts heretofore or hereafter accruing thereon or at any time chargeable to Debtor in connection therewith are referred to as the **"Prepetition Debt"**); the Prepetition Debt arose in connection with revolving loans extended by Prepetition Lender to Debtor (the **"Prepetition Loans"**) pursuant to a certain Credit and Security Agreement dated October 19, 2009, between Prepetition Lender and Debtor, a copy of which may be reviewed at the offices of Debtor's counsel (hereinafter, together with all amendments thereto and modifications thereof, the **"Prepetition Loan Agreement"**).    Debtor has further stipulated in the Motion or at the Interim Hearing that the Prepetition Debt is due and owing to Prepetition Lender without any defense, offset, recoupment or counterclaim.

D.    <u>Wells Fargo Prepetition Liens</u>.    As security for the payment of all Prepetition Debt, Debtor granted to Prepetition Lender, for the benefit of Prepetition Lender and Wachovia Bank, National Association, and pursuant to the Prepetition Loan Agreement and related documents (collectively, and including certain forbearance agreements related thereto, the **"Prepetition Loan Documents"**) security interests in and liens upon all or substantially all of Debtor's personal property, including, without limitation, all of Debtor's accounts, chattel paper

---

[1] This amount does not include attorneys' fees and legal expenses but does include an early termination fee in the amount of $150,000.

(including, without limitation, tangible chattel paper and electronic chattel paper), deposit accounts, documents, equipment, general intangibles (including, without limitation, all intellectual property rights), goods, instruments, inventory, investment property, letter-of-credit rights, letters of credit, and books and records (all such personal property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the "**Prepetition Collateral**"). Debtor has stipulated that the security interests and liens granted by Debtor to Prepetition Lender pursuant to the Prepetition Loan Documents (the "**Wells Fargo Prepetition Liens**") are legal, valid, enforceable, duly perfected and first priority security interests in and liens upon the Prepetition Collateral.

E.  Other Creditors Asserting Liens.

(1)  Crane & Co., Inc. Debtor also granted security interests (the "**Crane Liens**") to Crane & Co., Inc. ("**Crane**") with respect to Debtor's inventory that existed and was owned by Debtor on the Petition Date (the "**Prepetition Inventory**") to secure obligations owed by Debtor to Crane under that certain Secured Promissory Note dated February 25, 2009 (as at any time amended, the "**Junior Creditor Note**") in the original principal amount of $1,000,000, that certain Security Agreement dated February 25, 2009 (as at any time amended, the "**Junior Creditor Security Agreement**"), and that certain Purchase Agreement dated February 25, 2009 between Debtor and Crane (as at any time amended, the "**Junior Creditor Purchase Agreement**"; and together with the Junior Creditor Note and the Junior Creditor Security Agreement, the "**Junior Creditor Documents**"). The Crane Liens are junior in priority to all liens and security interests at any time granted by Debtor to Wells Fargo pursuant to the terms of that certain Intercreditor Agreement dated October 19, 2009, between Crane and Wells Fargo (as at any time amended or otherwise modified from time to time, the "**Intercreditor Agreement**").

(2)   Equipment Creditors.  Debtor has represented that the entities listed in the Exhibit D to the Motion (collectively, the **"Equipment Creditors"**) assert security interests, or ownership pursuant to alleged leases, as to specific equipment that may be in the possession of Debtor.  Debtor represents that there are no other security interests or liens asserted against any of the Collateral other than by Prepetition Lender, Crane, and the Equipment Creditors.

F.   Committee Objection.  On March 15, 2010, the Official Committee of Unsecured Creditors (the **"Committee"**) filed an objection to the Motion (Doc. No. 83) (the **"Committee Objection"**).  No other party in interest filed an objection to the Motion.

G.   Guarantor.  Kelly Plank-Dworkin, an individual resident of the State of Georgia (**"Guarantor"**), has guaranteed the payment of all "Indebtedness" under (and as defined in) the Prepetition Loan Agreement in an amount not to exceed the Maximum Guaranteed Amount (as defined in that certain Limited Guaranty Agreement dated October 19, 2009, from Guarantor to Wells Fargo (as at any time amended or otherwise modified, the **"Guaranty"**)).

H.   Need for Financing.  An immediate and ongoing need exists for Debtor to obtain financing to continue the operation of its business as debtor-in-possession under Chapter 11 of the Bankruptcy Code and to minimize disruption of Debtor's business. Despite diligent efforts, Debtor has been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code; and other than the financing from DIP Lender pursuant to the DIP Credit Agreement (as hereinafter defined), Debtor is unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of the estate pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code.

I.        Proposed DIP Facility.  Debtor has requested DIP Lender to establish a secured revolving credit facility in favor of Debtor (the "**DIP Facility**") pursuant to which Debtor may obtain loans from time to time ("**DIP Loans**"), in an aggregate amount up to $3,500,000 outstanding at any time, secured by all assets of Debtor.

J.        Certain Conditions to DIP Facility.  DIP Lender is willing to establish the DIP Facility, upon the terms and conditions set forth herein and in a certain Postpetition Credit and Security Agreement entered into or to be entered into by Debtor and DIP Lender, substantially in the form attached to the Motion as **Exhibit A** (together with all schedules, exhibits and annexes thereto, and as at any time amended or restated, the "**DIP Credit Agreement**").  DIP Lender's willingness to make DIP Loans and other extensions of credit (collectively, the "**Credit Extensions**") is conditioned upon, among other things, Debtor obtaining Court approval of the Credit Extensions, Debtor's compliance with certain covenants relating to the cash flow forecast annexed to the Motion as **Exhibit B** (as at any time amended or extended with the written consent of DIP Lender, the "**Budget**"), and Debtor's provision of adequate protection for Prepetition Lender's interests in the Prepetition Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code.  An additional condition to the willingness of DIP Lender to establish the DIP Facility is that DIP Lender receive, as security for the prompt payment of all DIP Loans, all interest, fees, expenses and the charges at any time payable by Debtor under the DIP Credit Agreement, a security interest in and lien upon all of Debtor's prepetition and postpetition assets and property (both real and personal), including, without limitation, all of Debtor's cash, accounts, inventory, equipment, real property, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, contract rights, commercial tort claims, investment property, leasehold interests, and books and records relating to any assets

of Debtor and all proceeds (including insurance proceeds) of the foregoing, whether now in existence or hereafter created, acquired or arising and wherever located (all such real and personal property, and the proceeds thereof, being collectively hereinafter referred to as the "**Collateral**"), and that such liens have the priority hereinafter set forth.  The Collateral shall not include Avoidance Claims or Avoidance Proceeds (as those terms are defined below), shall be subject to the Carve-Out (as defined below) and, with respect to Debtor's leasehold interests, shall include only the proceeds of leasehold interests as to which St. Johns Town Center, LLC, or Coconut Point Developers, LLC, is Debtor's landlord.

K.     Service of Motion.  Debtor has certified that copies of the Motion (together with copies of the proposed DIP Credit Agreement and Budget annexed thereto), the Interim Order and notice of the Final Hearing have been served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the United States Trustee (the "**U.S. Trustee**"), counsel for the Prepetition Lender, the 40 largest unsecured creditors of Debtor, the Internal Revenue Service, Crane, the Equipment Creditors and any other party that has requested notice in this case under Bankruptcy Rule 2002.  The Court finds that notice of the Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (c).

L.     Finding Cause.  Good cause has been shown for the entry of this Order and authorization for Debtor to obtain Credit Extensions pursuant to the DIP Credit Agreement as hereinafter provided.  Debtor's need for financing of the type afforded by the DIP Credit Agreement is immediate and critical. Entry of this Order will minimize disruption of Debtor's businesses and operations, will preserve the assets of Debtor's estate and is in the best

interests of Debtor, its creditors and its estate.  The terms of the proposed financing appear fair and reasonable, reflect Debtor's exercise of business judgment and are supported by reasonably equivalent value and fair consideration.  Pursuant to the Intercreditor Agreement, Crane pre-consented to debtor-in-possession financing being extended pursuant to this Order and the resulting relative priority of liens in favor of DIP Lender.

M.    Finding of Good Faith.  Based upon the record presented at the Interim Hearing, it appears that the DIP Credit Agreement and related documents, as well as the terms of this Interim Order, have been negotiated in good faith and at arm's length between Debtor, on the one hand, and Prepetition Lender and DIP Lender (collectively, the "**Lender**"), on the other. Therefore, all Credit Extensions to Debtor pursuant to the DIP Credit Agreement shall be deemed to have been made in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

N.    Jurisdiction; Core Proceeding.  This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.    Grant of Motion; Authorization of Financing; Objections Resolved.

(a)    The Motion is hereby granted and the Court hereby authorizes and approves (i) Debtor's execution and delivery of the  DIP Credit Agreement in substantially the form annexed to the Motion and all instruments, security agreements, assignments, pledges, mortgages, reaffirmations and other documents referred to therein or requested by DIP Lender to give effect to the terms thereof (the DIP Credit Agreement and such other instruments, security

agreements, assignments and other documents, as at any time amended, being collectively called the **"DIP Financing Documents"**); (ii) Debtor's obtaining DIP Loans and other Credit Extensions in accordance with the DIP Credit Agreement from time to time up to an aggregate principal amount outstanding at any time not to exceed $3,500,000 plus interest, fees and other charges payable in connection therewith, and to incur any and all liabilities and obligations thereunder and to pay all principal, interest, fees, expenses and other obligations provided for under the DIP Financing Documents; and (iii) Debtor's satisfying all conditions precedent and performing all obligations hereunder and thereunder in accordance with the terms hereof and thereof. DIP Lender shall not have any obligation or responsibility to monitor Debtor's use of the DIP Loans and may rely upon Debtor's representations that the amount of Credit Extensions requested at any time, and the use thereof, are in accordance with the requirements of this Order, the DIP Financing Documents and Bankruptcy Rule 4001(c)(2). The Debtor's use of proceeds of the DIP Loans authorized under this Order shall not impair, release or alter the liability of Guarantor with respect to the Prepetition Debt or DIP Obligations (as hereinafter defined).

(b)     At the Final Hearing, Debtor and DIP Lender announced certain modifications of the DIP Facility designed to, among other things, reduce the origination fee payable by Debtor in connection with the DIP Facility to $25,000 and eliminate such origination fee in its entirety if a sale contemplated by the Sale Motion (Docket No. 35) closes on or before March 31, 2010. To the extent that the Committee Objection has not been resolved by the modifications announced at the Final Hearing by Debtor and DIP Lender, it is hereby overruled in its entirety for the reasons stated on the record at the Final Hearing. As to the allegations regarding criminal usury in the Committee Objection, the Court hereby finds and determines that there is no evidence of DIP

Lender's intent to violate the Georgia criminal usury statute; that it is difficult to calculate the amount of funds to be advanced by DIP Lender for purposes of measuring the effective interest rate under the DIP Credit Agreement; and that the DIP Credit Agreement contains a standard usury savings clause that requires the reapplication or refund of any interest charged or collected that exceeds the maximum amount permitted by law.  In the event that it is determined by final order of this Court that the interest charged or collected under the DIP Credit Agreement exceeds the maximum amount permitted by law, then as the sole and exclusive remedy, any such excess shall be reapplied to principal, held as security for any contingent DIP Obligations or Pre-Petition Debt or refunded to Debtor.

2.    <u>Execution and Delivery of DIP Financing Documents</u>.    Upon execution and delivery thereof, the DIP Financing Documents shall constitute valid and binding obligations of Debtor, enforceable against Debtor in accordance with their terms.    In furtherance of the provisions of paragraph 1 of this Order, Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, pledge agreements, mortgages, deeds of trust, deeds to secure debt, financing statements and intellectual property filings), to obtain from Guarantor reaffirmations, extensions, guaranties and security agreements to the extent required by the DIP Credit Agreement, and to pay all filing and recording fees, in each case as may be necessary or, in the opinion of DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Financing Documents, to validate the perfection of the DIP Liens (as defined below) or as otherwise required or contemplated by the DIP Financing Documents.

3.    <u>DIP Liens</u>.    Subject to the provisions of subparagraph 9(a) below, all Credit Extensions, together with all interest, fees and other charges (including, without limitation,

reasonable legal fees) at any time or times payable by Debtor to DIP Lender in connection therewith or otherwise payable by Debtor pursuant to the DIP Financing Documents (all such Credit Extensions and all other "Indebtedness" (as such term is defined in the DIP Credit Agreement, and including, without limitation, bank account and treasury management fees owed to DIP Lender and Wachovia Bank, National Association) are collectively called the "**DIP Obligations**") shall be, and hereby are, secured by security interests and liens in favor of DIP Lender with respect to all of the Collateral (collectively, the "**DIP Liens**"), as follows:

(a)    <u>Unencumbered Collateral</u>.    Pursuant to Section 364(c)(2) of the Bankruptcy Code, perfected first priority senior security interests in and liens upon all Collateral that, as of the Petition Date, is not subject to other valid, perfected and non-avoidable liens or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date), as permitted by Section 546(b) of the Bankruptcy Code; and

(b)    <u>Encumbered Collateral</u>.  Pursuant to Section 364(c)(3) of the Bankruptcy Code, perfected junior security interests in and liens upon all Collateral that is subject to valid, perfected and non-avoidable liens in existence on the Petition Date or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date), as permitted by Section 546(b) of the Bankruptcy Code, with the exception of the Crane Liens which, with the consent of Crane evidenced by the Intercreditor Agreement, shall be junior in priority to the DIP Liens and to the Wells Fargo Replacement Liens (as defined below); and

(c)      Extent of Priming Lien.  Pursuant to Section 364(d) of the Bankruptcy Code, the DIP Liens shall be senior in priority to the Crane Liens and the Crane Replacement Liens (as defined herein).

Notwithstanding the foregoing provisions of this paragraph 3 or anything to the contrary in the DIP Financing Documents, the DIP Liens shall be subject to the Carve-Out (defined below), as and to the extent provided below, and the DIP Liens shall not attach to any of the following property (unless Debtor shall grant or consent to any lien or security interest therein in favor of any other party, in which event all such property shall be subject to the DIP Liens referred to in the lead in text of this paragraph 3): (x) any claims pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code (the "**Avoidance Claims**"), or (y) any proceeds or property recovered in connection with the successful prosecution or settlement of Avoidance Claims (the "**Avoidance Proceeds**").

4.      Superpriority Claim; Surcharge.

(a)      Scope of Superpriority Claim.  Subject to the provisions of paragraph 9(a) below, all DIP Obligations shall have administrative priority in accordance with, and shall constitute an allowed superpriority claim (the "**Superpriority Claim**") pursuant to, Section 364(c)(1) of the Bankruptcy Code over all other administrative expenses in Debtor's case of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 726 or 1114 of the Bankruptcy Code; provided, however, that the Superpriority Claim shall not adversely affect the Carve-Out (as defined below).

(b)      No Surcharge.  Except for the Carve-Out, no costs or administrative expenses that have been or may be incurred in this Chapter 11 case, in any proceedings related hereto or in any superseding Chapter 7 cases and no priority claims are or will be prior to or on

-12-

parity with the Superpriority Claim of DIP Lender for the DIP Obligations.  In no event shall any costs or expenses of administration be imposed upon Lender or any of the Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of Lender, and no such consent shall be implied from any action, inaction or acquiescence by Lender.

5.      Repayment.  The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Financing Documents and as provided herein, without offset or counterclaim.  In no event shall Debtor be authorized to offset or recoup any amounts owed, or allegedly owed, by DIP Lender to Debtor or any of its subsidiaries or affiliates against any of the DIP Obligations.  Without limiting the generality of the foregoing, pursuant to (among other provisions) section 5.27 of the DIP Credit Agreement, Lender shall be entitled, in its discretion (but not required), to pay on behalf of Debtor any postpetition sales and use taxes owed by Debtor, the collected proceeds of which constitute trust funds under applicable non-bankruptcy law; and in the event that Lender pays any such sales and use taxes, such amounts shall become part of the DIP Obligations, without regard to whether or not such payment causes the total DIP Obligations to exceed the Maximum Line Amount (as defined in the DIP Credit Agreement), and shall be secured by all of the Collateral.  DIP Lender reserves the right to move the Court for an order authorizing DIP Lender to pay (as a loan to Debtor, and to be added to the Prepetition Debt) prepetition sales and use taxes owed by Debtor, and any party in interest may object to the same.

6.      Cash Collateral.

(a)      Collection Account. Debtor shall cause all proceeds of Collateral ("**Cash Collateral**") to be promptly deposited in the Collection Account (as that term is defined in the

DIP Credit Agreement) or into a Store Account (as that term is defined in the DIP Credit Agreement) for transfer in accordance with the DIP Credit Agreement to the Collection Account or, with respect to any payment in respect of credit card receivables, to the Credit Card Collection Account (as defined in the DIP Credit Agreement) for transfer in accordance with the DIP Credit Agreement to the Collection Account.  Prior to the deposit of Cash Collateral to the Collection Account, Debtor shall be deemed to hold such proceeds in trust for the benefit of Lender.

(b)     Application of Cash Collateral.  Lender shall be entitled to apply such Cash Collateral in accordance with the DIP Credit Agreement and the adequate protection provisions of Section 7 hereof.

7.     Adequate Protection of Prepetition Lender.  As adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code for Debtor's use, consumption, sale, collection or other disposition of any of the Prepetition Collateral, the following measures of adequate protection are granted:

(a)     Wells Fargo Replacement Liens.  Prepetition Lender is hereby granted replacement liens in and to all of the Collateral (the **"Wells Fargo Replacement Liens"**) as partial adequate protection to Prepetition Lender to the extent of any diminution in value of the Prepetition Collateral caused by Debtor's use, consumption, sale, collection or other disposition of any Prepetition Collateral.  Subject to paragraph 9(a), the Wells Fargo Replacement Liens shall be senior in priority to the DIP Liens, the Crane Liens and the Crane Replacement Liens (defined below).

(b)     Crane Replacement Liens.  Crane is hereby granted replacement liens (the **"Crane Replacement Liens"**) in and to all inventory acquired by Debtor after the Petition Date

-14-

(the "**Postpetition Inventory**") as partial adequate protection to Crane to the extent of any diminution in value of Crane's interest in the Prepetition Inventory caused by Debtor's use, consumption, sale, collection or other disposition of any Prepetition Inventory.  The Crane Replacement Liens shall be junior in priority to the DIP Liens and the Wells Fargo Replacement Liens, and further subject to the provisions of paragraph 9(a) of this Order. The Crane Replacement Liens and the Wells Fargo Replacement Liens are hereinafter collectively referred to as the "**Replacement Liens**."

(c)      <u>Proceeds of Prepetition Accounts</u>.  All collections and proceeds of Debtor's accounts receivable existing or arising on or prior to the Petition Date (the "**Prepetition Accounts**"), including, without limitation, all payments by account obligors indebted to Debtor with respect to transactions entered into or concluded prior to the Petition Date, may be applied by Prepetition Lender to the Prepetition Debt in such order of application as Prepetition Lender shall elect, until the Prepetition Debt is repaid in full and thereafter applied by DIP Lender to the DIP Obligations.  Debtor shall use its best efforts to provide promptly to Lender reconciliations identifying the portion of each deposit to the Collection Account that represents proceeds of Prepetition Accounts so as to assist Lender in the application of the proceeds of Prepetition Accounts in accordance herewith.  Lender shall be entitled to presume that all deposits to the Collection Account, Store Accounts and Credit Card Collection Account and all collections of accounts receivable received by Debtor after the Petition Date constitute proceeds of Prepetition Accounts, until such time as the Prepetition Lender has received and applied an amount equal to the aggregate balance of the Prepetition Accounts on the books and records of Debtor as of the Petition Date.

(d)    <u>Proceeds of Prepetition Inventory</u>.    All collections and proceeds of Prepetition Inventory may be applied by Prepetition Lender to the Prepetition Debt in such order of application as Prepetition Lender shall elect, until the Prepetition Debt is repaid in full, and thereafter applied by DIP Lender to the DIP Obligations.    Based upon representations of representatives of Debtor that Debtor does not intend to acquire any significant inventory after the Petition Date, Lender shall be entitled to presume that all sales of inventory by Debtor constitute sales of Prepetition Inventory unless Lender has actual knowledge to the contrary at the time of application of proceeds by Lender.

(e)    <u>Use of Other Prepetition Collateral</u>.    In consideration of Debtor's use, consumption, sale, or other disposition of Prepetition Collateral other than Prepetition Inventory or Prepetition Accounts, including, without limitation, equipment, general intangibles, chattel paper, documents, instruments, investment property, and deposit accounts (**"Other Prepetition Collateral"**), Prepetition Lender may apply the proceeds of Other Prepetition Collateral to the Prepetition Debt in such order of application as Prepetition Lender shall elect, until the Prepetition Debt is repaid in full, and thereafter such proceeds may be applied by DIP Lender to the DIP Obligations.

(f)    <u>Reservation of Rights</u>.    Nothing herein shall be deemed to be a waiver by Prepetition Lender of its right to request additional or further protection of its interests in any property of Debtor, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner or the conversion or dismissal of this Chapter 11 case, or to request any other relief in this case, nor shall anything herein or in any of the DIP Financing Documents constitute an admission by Prepetition Lender of the quantity, quality or value of any Collateral securing the Prepetition Debt or DIP Obligations or constitute a finding of adequate protection with

-16-

respect to the interests of Prepetition Lender in any Collateral.  Subject to the Carve-Out (defined below), Prepetition Lender shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale, or other disposition of any of the Collateral, to the extent that the protection afforded by this Order to Prepetition Lender's interests in any Collateral proves to be inadequate.

8.    <u>Fees and Expenses of Professionals</u>.  For so long as no "Event of Default" under (and as defined in) the DIP Credit Agreement shall have occurred and be continuing, Debtor is authorized to use proceeds of DIP Loans (but not proceeds of any of the Collateral without the prior written consent of Lender, except for the Carve-Out (as such term is defined below)), solely for purposes authorized by this Order and by the DIP Credit Agreement, including to pay compensation and expense reimbursement (collectively, **"Professional Expenses"**) of professionals (including attorneys, accountants, appraisers, consultants and investment bankers) retained by Debtor (the **"Debtor Professionals"**) or retained by the Committee (the **"Committee Professionals"**; and together with the Debtor Professionals, the **"Professionals"**) to the extent that such compensation and expense reimbursement is approved by the Court or is otherwise payable by order of the Court.

9.    <u>Carve-Out</u>.

(a)    <u>Scope of Carve Out</u>.  The DIP Liens and Superpriority Claim conferred upon DIP Lender, and all liens in favor of the Prepetition Lender, shall be subject and subordinate to the payment of the following to the extent that there are not sufficient unencumbered funds in Debtor's estate (and, in the case of all Professionals, sufficient retainers) to pay such amounts: (i) Professional Expenses of Debtor Professionals that are approved for payment by final order of the Court and do not exceed $370,000 in the aggregate;

(ii) Professional Expenses of Committee Professionals that are approved for payment by final order of the Court and do not exceed $100,000 in the aggregate; (iii) fees required to be paid to the Clerk of the Court; and (iv) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) (the amounts described in the preceding clauses (i) through (iv) are collectively called the "**Carve-Out**").   Any payments made or funds set aside by Debtor on account of Professional Expenses, and all Credit Extensions made by DIP Lender on account of Professional Expenses, during the pendency of the Chapter 11 case shall reduce the applicable Carve-Out. Notwithstanding anything to the contrary in this Order, no proceeds of DIP Loans or any of the Collateral and no amounts received pursuant to the Carve-Out shall be used to pay Professional Expenses of any Professionals or any other costs incurred in connection with (1) commencing or continuing any claims, causes of actions or contested matters against Lender, including, without limitation, discovery proceedings subsequent to the commencement of any such claims or causes of action; (2) preventing, hindering or delaying performance or enforcement by Lender of its rights or remedies under this Order, any of the DIP Financing Documents, any of the Prepetition Loan Documents or any other agreement with Debtor; (3) challenging any liens or security interests in favor of Prepetition Lender or the DIP Liens or Superpriority Claim of DIP Lender; or (4) any other purpose prohibited by the DIP Financing Documents.

(b)      Funding of Carve-Out. After termination of the DIP Facility on the Termination Date (as defined in the DIP Credit Agreement), DIP Lender shall, as and to the extent provided in the DIP Credit Agreement and without being deemed to have waived any Event of Default or to have reinstated the DIP Facility (or any commitments thereunder), make one or more DIP Loans pursuant to the DIP Credit Agreement to fund the Carve-Out or

-18-

otherwise pay any Court-approved Professional Expenses that are covered by the Carve-Out, in each case after subtracting the amount of all retainers held by each Professional and amounts paid, funded or set aside for the benefit of such Professional prior to the Termination Date. All such DIP Loans shall be entitled to all of the benefits and security of the DIP Financing Documents and this Order and shall reduce the Carve-Out to the extent of any such DIP Loans used to fund the Carve-Out. After the Carve-Out has been fully funded, the Carve-Out provided in paragraph 9(a) of this Order shall be deemed satisfied and the DIP Liens, Superpriority Claims and liens in favor of Lender shall no longer be subject and subordinate to payment of the Carve-Out. The proceeds of any such DIP Loan may be held by Debtor's counsel for the benefit of the payment of Professionals. No person shall have any claim to the proceeds of any DIP Loan used to fund the Carve-Out other than (i) the Professionals and (ii) DIP Lender's right to refund of any excess after payment of all fees and expenses that are included in the Carve-Out as defined in paragraph 9(a).

10.    <u>Preservation of Rights Granted Under This Order</u>.

(a)    <u>Protection From Subsequent Financing Order</u>. There shall not be entered in this Chapter 11 case or in any successor case any order that authorizes the obtaining of credit or the incurrence of indebtedness by Debtor (or any trustee or examiner) that is (i) secured by a security, mortgage or collateral interest or lien on all or any part of the Collateral that is equal or senior to the DIP Liens (other than the Wells Fargo Replacement Liens granted in this Order) or (ii) entitled to priority administrative status that is equal or senior to the Superpriority Claim granted to DIP Lender herein; <u>provided</u>, <u>however</u>, that nothing herein shall prevent the entry of an order that specifically provides that, as a condition to the granting of the benefits of clauses (i)

or (ii) above, all of the DIP Obligations must be indefeasibly paid in full, in cash, from the proceeds of such credit or indebtedness.

(b)    <u>Rights Upon Dismissal, Conversion or Consolidation</u>.  If this Chapter 11 case is dismissed, converted or substantively consolidated with another case, then neither the entry of this Order nor the dismissal, conversion or substantive consolidation of this Chapter 11 case shall affect the rights of DIP Lender under the DIP Financing Documents or this Order, and all of the respective rights and remedies thereunder of DIP Lender shall remain in full force and effect as if this Chapter 11 case had not been dismissed, converted, or substantively consolidated. It shall constitute an Event of Default if Debtor seeks, or if there is entered, any order dismissing this Chapter 11 case. If an order dismissing this Chapter 11 case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Liens, Replacement Liens and Superpriority Claim granted to and conferred upon Lender and Crane shall continue in full force and effect and shall maintain their priorities as provided in this Order (and that such liens and Superpriority Claim shall, notwithstanding such dismissal, remain binding on all interested parties) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, Replacement Liens and Superpriority Claim referred to herein.

(c)    <u>Survival of Order</u>. The provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting this Chapter 11 case from Chapter 11 to Chapter 7.

(d)    <u>No Discharge Under Plan</u>. The DIP Obligations shall not be discharged by the entry of any order confirming a plan of reorganization in this Chapter 11 case and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, Debtor has waived such discharge.

(e)    <u>No Marshalling</u>. In no event shall DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any Collateral securing any of the DIP Obligations; and in no event shall any DIP Liens be subject to any prepetition or postpetition lien or security interest that is avoided and preserved for the benefit of Debtor's estate pursuant to Section 551 of the Bankruptcy Code.

11.    <u>Automatic Perfection of Liens</u>. The DIP Liens and Replacement Liens shall be deemed valid, binding, enforceable and perfected upon entry of this Order. DIP Lender shall not be required to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including possession of any of the Collateral) in order to validate the perfection of the DIP Liens. If DIP Lender shall, in its discretion, choose to file any such mortgages, deeds of trust, security deeds or UCC-1 financing statements, or take any other action to validate the perfection of any part of the DIP Liens, Debtor and its respective officers are directed to execute any documents or instruments as DIP Lender shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. DIP Lender may, in its discretion, file a certified copy of this Order in any filing office in any jurisdiction in which Debtor is organized or has or maintains any Collateral or an office, and each filing office is directed to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles recording or similar tax.

12.    <u>Reimbursement of Expenses</u>. All reasonable costs and expenses incurred by DIP Lender in connection with the negotiation and drafting of the DIP Financing Documents, or any amendments thereto, the preservation, perfection, protection and enforcement of DIP Lender's rights hereunder or under the DIP Financing Documents, or in the collection of the DIP Obligations, including, without limitation, all filing and recording fees and reasonable fees and expenses of attorneys, accountants, appraisers and other professionals incurred by DIP Lender in connection with any of the foregoing, whether any of the foregoing were incurred prior to or after the Petition Date, shall form a part of the DIP Obligations and shall be paid by Debtor (without the necessity of filing any application with or obtaining further order from the Court) in accordance with the terms of the DIP Financing Documents.

13.    <u>Amendments to DIP Financing Documents</u>. Debtor and DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents, any amendments to and modifications of any of the DIP Financing Documents without further order of the Court on the following conditions: (i) the amendment or modification must not constitute a material change to the terms of the DIP Financing Documents, (ii) copies of the amendment or modification must be served upon counsel for the Committee, the U.S. Trustee, Crane, Equipment Creditors, and other interested parties specifically requesting such notice, and (iii) notice of the amendment is filed with the Court. Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court.  For purposes hereof, a "material change" shall (i) not include the agreement of DIP Lender to extend any date for the benefit of Debtor, and (ii) mean a change that operates to shorten the maturity of the DIP Obligations, increase the aggregate amount of the commitments under the DIP Facility, increase the rate of interest other than as currently provided in or contemplated by the DIP Financing

Documents, add specific events of default, or enlarge the nature and extent of default remedies available to DIP Lender following an event of default.

14.    <u>Events of Default; Remedies</u>.

(a)    <u>Events of Default and Remedies</u>.    Upon or after the occurrence of an "Event of Default" under (and as defined in) the DIP Credit Agreement, including, without limitation, an Event of Default resulting from the failure of Debtor duly and punctually to observe, perform or discharge any obligation or duty imposed upon it by this Order or any of the DIP Financing Documents; the appointment in this Chapter 11 case of a trustee or an examiner with expanded powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code; the dismissal or conversion to Chapter 7 of this Chapter 11 case; the filing of a motion by Debtor to convert this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code or to dismiss this Chapter 11 case; this Order is altered, amended, vacated, supplemented, modified, stayed or reversed on appeal or Debtor shall file any motion to alter, amend, vacate, supplement or modify this Order without DIP Lender's prior consent; or relief from stay shall be granted to allow a creditor to foreclose upon any Collateral consisting of accounts or inventory or with respect to any other Collateral having an aggregate book value in excess of $2,500; then, in any such event, Lender shall be fully authorized, in its sole discretion, to terminate further Credit Extensions under the DIP Facility as provided in the DIP Credit Agreement, to demand payment of all DIP Obligations, to hold any balances in any accounts of Debtor, and, upon five (5) business days prior written notice to counsel for Debtor, counsel for the Committee and the U.S. Trustee, to enforce the DIP Liens and Wells Fargo Prepetition Liens with respect to the Collateral, to effect offsets of bank account balances and to take all other actions and exercise all other remedies under the

DIP Financing Documents, Prepetition Loan Documents and applicable law that may be necessary or deemed appropriate by Lender to collect any of the DIP Obligations and Prepetition Debt, to proceed against or realize upon all or any portion of the Collateral as if this Chapter 11 case or any superseding Chapter 7 case was not pending and otherwise to enforce the DIP Financing Documents, this Order and the Prepetition Loan Documents.

(b)    <u>Rights Cumulative</u>.  The rights, remedies, powers and privileges conferred upon DIP Lender and Prepetition Lender pursuant to this Order shall be in addition to and cumulative with those contained in the DIP Financing Documents and the Prepetition Loan Documents.

15.    <u>Monitoring of Collateral</u>.

(a)    <u>Inspection Rights</u>.  Representatives of Lender shall be authorized to visit the business premises of Debtor and its subsidiaries to (i) inspect any Collateral or other assets, (ii) inspect and make copies of any books and records of Debtor and its subsidiaries, and (iii) verify or to obtain supporting details concerning the financial information to be provided to Lender hereunder or under any of the DIP Financing Documents or Prepetition Loan Documents, all as permitted by the DIP Credit Agreement and Prepetition Loan Agreement.

(b)    <u>DIP Lender's Right to Retain Professional Persons</u>.  DIP Lender shall be authorized to retain appraisers, consultants and financial advisors, at Debtor's expense, which appraisers, consultants and advisors shall be afforded reasonable access to the Collateral and Debtor's business premises, during normal business hours, for purposes of monitoring the business of Debtor, verifying Debtor's compliance with the terms of the DIP Financing Documents, this Order and the Prepetition Loan Documents, and appraising all or any part of the Collateral.

-24-

16.    <u>Modification of Automatic Stay</u>.  The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby lifted and terminated as to Lender to the extent necessary to implement the provisions of this Order and the DIP Financing Documents, thereby permitting Lender, *inter alia*, to receive collections of Collateral for application to the Prepetition Debt and the DIP Obligations as provided herein, to file or record any UCC-1 financing statements, mortgages, deeds of trust, security deeds and other instruments and documents evidencing or validating the perfection of the DIP Liens, and to enforce the DIP Liens upon default subject to the prior notice provisions of this Order.

17.    <u>Effect of Appeal</u>.   Consistent with 11 U.S.C. § 364(e), if any or all of the provisions of this Order are hereafter modified, vacated or stayed on appeal:

(a)    such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability or DIP Liens granted or incurred by Debtor to DIP Lender prior to the effective date of such stay, modification or vacation, or the validity, enforceability or priority of any DIP Liens, priority or right authorized or created under the original provisions of this Order or pursuant to the DIP Financing Documents; and

(b)    any indebtedness, obligation or liability incurred by Debtor to DIP Lender under the DIP Financing Documents prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and DIP Lender shall be entitled to all the rights, remedies, privileges and benefits, including the DIP Liens and priorities granted herein and pursuant to the DIP Financing Documents, with respect to any such indebtedness, obligation or liability. All Credit Extensions under the DIP Financing Documents are made in reliance upon this Order, and, therefore, the indebtedness resulting from such Credit Extensions prior to the effective date of any stay, modification or vacation of this

Order cannot (i) be subordinated, (ii) lose the priority of the DIP Liens or superpriority administrative claim status, or (iii) be deprived of the benefit of the status of the DIP Liens and Superpriority Claim granted to DIP Lender under this Order or the DIP Financing Documents, as a result of any subsequent order in this Chapter 11 case, or any superseding case, of Debtor.

18.    <u>Deadline for Challenge to Prepetition Liens and Claims</u>.    Debtor has acknowledged, stipulated and agreed that the Prepetition Debt and all liens and security interests of Prepetition Lender in the Prepetition Collateral are legal, valid, binding, enforceable, perfected and non-avoidable; the Prepetition Debt is allowable as a claim against Debtor; and the Prepetition Debt is not subject to offset, counterclaim, recoupment, or equitable subordination. In consideration of DIP Lender's agreement to provide Credit Extensions pursuant to the DIP Financing Documents, Debtor has waived and shall be barred (a) from challenging the amount, validity, extent, perfection or priority of or seeking to set aside, avoid, offset or subordinate any of the Prepetition Debt or any liens or security interests of Prepetition Lender in any Prepetition Collateral and (b) from asserting against Prepetition Lender or DIP Lender a claim under any lender liability theories or pursuant to Sections 105, 510, 544, 547, 548, 549 or 550 of the Bankruptcy Code.  In addition, the Committee has stipulated and agreed that the $150,000 early termination fee charged by Prepetition Lender (the **"Prepetition Fee"**) is valid, due and owing by Debtor, constitutes part of the Prepetition Debt and is not subject to challenge for any reason. Notwithstanding the foregoing, but excluding (in the case of the Committee) any challenge to the Prepetition Fee, the validity, extent, enforceability and perfection of the liens and security interests of Prepetition Lender in the Prepetition Collateral shall be subject only to the rights of any interested party (other than Debtor) having standing to do so to commence an appropriate adversary proceeding or contested matter objecting to the validity or amount of the

Prepetition Debt or the extent, validity, perfection or avoidability of the prepetition liens and security interests of Prepetition Lender in the Prepetition Collateral, seeking disgorgement of all or part of the payment of the Prepetition Debt, or asserting other claims against Prepetition Lender which adversary proceeding or contested matter must be filed no later than April 30, 2010, unless such deadline is extended by the Court for cause shown.    If such adversary proceeding or contested matter is not timely filed, the liens and security interests of Prepetition Lender in the Prepetition Collateral shall be deemed legal, valid, binding, enforceable, perfected and unavoidable and all of the Prepetition Debt shall be conclusive and binding upon all parties in interest in this case, including any subsequently appointed Chapter 11 trustee, as a legal, valid, binding, enforceable claim that is not subject to offset, counterclaim, equitable subordination or other defense or claim; provided that absent further order of the Court, the deadline for challenges and the assertion of claims established in this paragraph 18 shall not be binding upon a subsequently appointed Chapter 7 trustee.

19.    Service of Order.  Promptly after the entry of this Order, Debtor shall mail, by first class mail, a copy of this Order to counsel for DIP Lender, the U.S. Trustee, counsel for the Committee, Crane, the Equipment Creditors, the Internal Revenue Service and all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules, and shall file a certificate of service regarding same with the Clerk of the Court.

20.    No Deemed Control.  By consenting to this Order, making Credit Extensions or administering the financing relationship with Debtor pursuant to the DIP Financing Documents, DIP Lender shall not be deemed to be in control of Debtor or its operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as

amended, or any similar state or federal statute) with respect to the operation or management of Debtor.

21. <u>Binding Effect; Successors and Assigns</u>. The provisions of this Order shall be binding upon all parties in interest in this Chapter 11 case, including, without limitation, DIP Lender, Prepetition Lender, Crane, Equipment Creditors, Guarantor, and Debtor and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed or elected for the estate of Debtor or any Chapter 7 trustee appointed in a superseding Chapter 7 case, except as provided in paragraph 18 above), and shall inure to the benefit of Lender, Debtor and their respective successors and assigns. In no event shall DIP Lender have any obligation to make Credit Extensions to any Chapter 7 or Chapter 11 trustee appointed or elected for the estate of Debtor.

22. <u>Inconsistencies</u>. To the extent that any provisions in the DIP Credit Agreement are inconsistent with any of the provisions of this Order, the provisions of this Order shall govern and control.

23. <u>Effectiveness of Order</u>. This Order shall be immediately effective and enforceable upon its entry.

***END OF DOCUMENT***

Prepared and presented by:

ALSTON & BIRD LLP

<u>/s/ Wendy R. Reiss</u>
Dennis J. Connolly (Bar No. 182275)
Wendy R. Reiss (Bar No.600295)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
*Proposed Attorneys for Debtor*