# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SWOOZIE'S, INC.,[1] | ) | Case No. 10-66316-CRM |
| | ) | |
| Debtor. | ) | |

**SUPPLEMENT TO DEBTOR'S MOTION FOR AN ORDER AUTHORIZING AND APPROVING THE SALE OF DEBTOR'S ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**

The above-captioned debtor and debtor in possession ("**Debtor**"),[2] by and through its undersigned attorneys, hereby submits this supplement (the "**Supplement**") to apprise this Court and parties in interest of the results of the auction of substantially all of Debtor's assets, which was held on March 25, 2010 (the "**Auction**") in anticipation of the March 29, 2010 hearing (the "**Sale Hearing**") to approve the sale of substantially all of Debtor's assets to Hilco Merchant Resources, LLC ("**Hilco**" or the "**Winning Bidder**").

## BACKGROUND

1. On March 4, 2010, Debtor filed its motion for orders (A) (I) approving sale procedures and bidding protections to be employed in connection with the proposed sale of substantially all of Debtor's assets (the "**Bidding Procedures**"), (II) scheduling an auction and a hearing to consider approval of the Sale and other related relief, and (III) approving the proposed notice of the respective dates, times, and places for the auction and for the Sale Hearing (the relief requested in such items (A)(I) through (III) is collectively referred to herein as the "**Initial Relief**"); and (B)(I) authorizing and

---

[1] The last four digits of Debtor's taxpayer identification number are 5738 and Debtor's mailing address is 80 W. Wieuca Road, Suite 302, Atlanta, GA 30342.
[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Sale Motion and the Bidding Procedures.

approving proposed asset purchase, agency, and lease designation rights agreements with Hudson Capital Partners, LLC ("**Hudson Capital**" or the "**Stalking Horse**"), or such other purchaser providing a higher or otherwise better offer for the Assets; (II) authorizing the Sale of the Assets free and clear of all liens, claims, encumbrances, and other interests; (III) authorizing Debtor to consummate all transactions related to the above; and (IV) granting other relief (the "**Sale Motion**").

2. On March 5, 2010, the Court held a hearing to consider the Initial Relief, which was continued to and concluded on March 8, 2010, and during which the Court granted the Initial Relief, including the form of Debtor's Notice of Bidding Procedures, Auction Date and Sale Hearing, the form of the Bidding Procedures, and the designation of Hudson Capital Partners, LLC, as the Stalking Horse Bidder.

3. On March 10, 2010, the Court entered its *Order (A)(I) Approving Sale Procedures And Bidding Protections To Be Employed In Connection With the Proposed Sale Of Debtor's Assets, (II) Scheduling An Auction And Hearing To Consider Approval Of the Sale of Debtor's Assets, And (III) Approving Notice Of Respective Dates, Times, and Places For Auction And For Hearing On Approval Of Sale Of Assets And Other Related Relief.* (Docket No. 62).

4. On March 11, 2010, Debtor caused the Notice of Bidding Procedures, Auction Date, and Sale Hearing, together with a copy of the Bidding Procedures, to be served on all creditors and parties in interest. See Affidavit of Eleni Kossivas (Docket No. 82).

5. On March 11, 2010, Debtor distributed a press release which included details regarding the Court's Order with respect to the Bidding Procedures and details regarding the scheduled Auction of substantially all of Debtor's assets.

6.      Sixty three (63) different news outlets, including print, video and Internet, picked up and published the press release.

## THE AUCTION

7.      Pursuant to the Bidding Procedures, Debtor accepted Qualifying Bids through the Bidding Deadline of 12:00 p.m. EDT on March 23, 2010. Prior to the Bidding Deadline, Debtor received three (3) Qualifying Bids other than the Stalking Horse Bid.

8.      On March 25, 2010, the Stalking Horse Bidder, Hilco, Gordon Brothers Group, and Great American Group (collectively, the "**Qualified Bidders**"), and various other interested parties, attended the Auction at the offices of Debtor's undersigned counsel.

9.      After competitive bidding, pursuant to the Bidding Procedures, against Great American Group's Initial Overbid in the amount of $5,435,000, the auction concluded with Hilco named as the Winning Bidder with a Bid in the amount of $7,425,000.

## THE PROPOSED SALE

**Exclusion of Debtor's Intellectual Property and Lease Designation Rights from Auction**

10.      At the Auction, Debtor, in consultation with counsel for the Official Committee for Creditors Holding General Unsecured Claims (the "**Committee**") determined it was in the best of Debtor, its estate and its creditors if its Intellectual Property ("**IP**") and Lease Designation Rights were excluded from the Sale.

11.      Hilco's Winning Bid does not include the purchase of Debtor's IP or Designation Rights with respect to Debtor's non-residential real property leases.

- 3 -

12.     Debtor intends to market and sell its IP and Designation Rights separate and apart from the current Sale.

**Assets to be Acquired by Hilco**

13.     Subsequent to the Auction and in connection with Hilco's Winning Bid, Debtor and Hilco entered into an Asset Purchase Agreement (the "**APA**") and an Agency Agreement (collectively, the "**Agreements**" and the consummation of which shall be the "**Sale**") substantially in the form of those attached hereto as Exhibit A and Exhibit B, respectively.[3]

14.     Pursuant to the terms of the APA, and subject to the terms of the Agency Agreement, Hilco will acquire, among other things, the exclusive rights to serve as Debtor's exclusive agent for purposes of disposing all of Debtor's inventory, equipment (other than that equipment which may be leased and subject to liens), and furniture and fixtures.  See APA, § 1.01.

15.     The Excluded Assets that Hilco will not be acquiring in connection with the Agreements include, among other things, (a) Debtor's cash; (b) Debtor's causes of action, other than causes of action related to the Acquired Assets; (c) Debtor's books and records; provided however Purchaser shall have reasonable access to such books and records to the extent necessary to consummate the transactions contemplated by the Agreement and/or the Agreements; (d) Debtor's credit card deposits and receivables; (e) Debtor's security deposits; (f) Debtor's insurance refunds; (g) Debtor's tax refunds; (h) Debtor's leased equipment, which remains subject to liens, as identified on Schedule

---

[3] The following descriptions of the terms of the APA and the Agency Agreement are intended solely to provide a brief overview thereof.  Parties should refer to the APA and the Agency Agreement for the complete and detailed terms thereof.  In addition, all capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the APA and the Agency Agreement.

1.04 to the APA; (i) subject to Hilco's rights under the Agency Agreement, Debtor's intellectual property, which includes, but is not limited to, the items listed on Schedule 1.04 to the APA; and (j) Debtor's causes of action under Chapter 5 of the Bankruptcy Code. See APA, § 1.04.

16. Specifically, the Agency Agreement will allow Hilco to act as Debtor's exclusive agent (the "**Agent**") for the limited purpose of: (a) selling all of the Merchandise located or to be located in Debtor's stores (collectively, the "**Stores**"), as identified in Exhibit A to the Agency Agreement (collectively, the "**Closing Locations**"), by conducting "going out of business," "store closing," "bankruptcy liquidation," or similar themed sales at the Stores (the "**Liquidation Sales**"); and (b) disposing of Debtor's owned FF&E located at the Closing Locations, pursuant to the terms and using procedures set forth in the Agency Agreement. See Agency Agreement § 6.

17. In connection with the Liquidation Sales, Hilco will be authorized to, in its discretion, include at the Stores additional merchandise up to an aggregate cost of $2,000,000.00, which is of like kind and quality as the Merchandise located in the Stores ("**Additional Merchandise**") and consistent with the terms explained more fully below and in Section 3.5(a) of the Agency Agreement.

**Modifications of Agreements at Auction**

18. Through competitive bidding at the Auction, certain notable modifications were made to the Stalking Horse Bid Agreements previously filed with the Court as attachments to the Sale Motion.[4]

> A. Section 6.1 of the Agency Agreement was modified to grant the Agent the right, within its sole discretion, to elect to extend the term of the Liquidation Sales in the Closing Locations through and including June 15, 2010;
>
> B. Section 3.5(a) of the Agency Agreement was modified to allow the Agent to augment Debtor's inventory with Additional Merchandise, as discussed above; provided, however, that Agent purchase no more than 25% of the Additional Merchandise from sources other than Merchant's existing vendors;
>
> C. Section 7.5(a) of the Agency Agreement was modified to require the Agent to accept, pursuant to the terms and conditions set forth in Section 7.5 of the Agency Agreement, returned items of merchandise that were sold and delivered prior to the Sale Commencement Date, to the extent such return is accompanied by a receipt and otherwise consistent with Debtor's customary policies; and
>
> D. Exhibit 10.1(k) to the Agency Agreement, Inventory Adjustment, was modified such that to the extent the cost value of Debtor's merchandise is determined to be less than $7,400,000, the Guaranteed Amount decreases on a *pro rata* basis within the designated increments as shown in Exhibit 10.1(k).

**Consideration to be Provided by Hilco**

19. In connection with the Agreements, Hilco will provide cash consideration of $7,425,000 (the "**Guaranteed Amount**"). Additionally, to the extent that Proceeds exceed the sum of (x) the Guaranteed Amount, and (y) the Expenses of the Sale, Hilco shall be entitled to retain the balance of the Proceeds up to five percent (5%) of the

---

[4] These modifications are fully explained in the revised Hilco Agreements, but are summarized herein for reference purposes only.

- 6 -

aggregate Cost Value of the Merchandise (the "**Agent's Fee**" and the sum of (x), (y) and the Agent's Fee, is the "**Sharing Threshold**"). All remaining Proceeds above the Sharing Threshold shall be shared fifty percent (50%) to Debtor and fifty percent (50%) to Hudson Capital. See Agency Agreement, § 3.1. Hilco has provided an earnest money deposit in the amount of $543,500, which is being held in an interest bearing escrow account pursuant to that certain Escrow Agreement between Debtor and Hilco dated March 24, 2010. See APA, § 2.03.

20. Additionally, Hillco will be unconditionally responsible for all Expenses incurred in conducting the Liquidation Sales in accordance with Section 4 of the Agency Agreement. "Expenses" includes all Store-level operating expenses of the Liquidation Sale and includes Occupancy Expenses, payroll and commissions for Retained Employees, and actual costs relating to the marketing and execution of the Liquidation Sales. See Agency Agreement § 4.1.

**Termination of the APA**

21. Debtor and Hilco have the ability to terminate the Agreements if (i) both Debtor and Hilco mutually consent in writing thereto or (ii) the Sale Order is not entered by March 29, 2010, unless such time is extended by mutual agreement of the parties. See APA, § 9.01.

## THE SECOND PLACE BID

22. Consistent with the Bidding Procedures previously approved by this Court, in the event that the Court approves the Sale, but Hilco fails to consummate the same because of a breach or failure to perform on its part, the next highest or otherwise best Qualified Bid, as disclosed at the Auction (the "**Second Place Bid**"), shall be deemed to be the Winning Bid, and Debtor shall be authorized, but not required, to

consummate the Sale in connection with the Second Place Bid without the need for further notice or order of the Court.

23. At the Auction, Gordon Brothers Group ("**Gordon Brothers**") was deemed to have placed the Second Place Bid, in the amount of $7,400,000, on all of the same material terms and conditions as the Winning Bid, except that the Second Place Bid contains no restriction on Gordon Brothers' ability to obtain Additional Merchandise from sources other than Debtor's existing vendors.

## **NOTICE**

24. Debtor has served, or will hereinafter serve, a copy of this Supplement, including all exhibits hereto, on the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Northern District of Georgia; (b) counsel for the Committee, (c) counsel for Wells Fargo Bank, N.A., (d) Crane & Co., Inc.; (e) the Internal Revenue Service, (f) Hudson Capital Partners, LLC, (g) Hilco Merchant Resources, LLC, (h) Gordon Brothers Group, (i) all parties to unexpired leases, (j) the Office of the Attorney General for each state in which Debtor operates a Store, and (k) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

Respectfully submitted this 26th day of March, 2010.

                ALSTON & BIRD LLP

                /s/ Wendy R. Reiss
                Dennis J. Connolly (Bar No. 182275)
                Wendy R. Reiss (Bar No.600295)
                Sage M. Sigler (Bar No. 300707)
                1201 West Peachtree Street
                Atlanta, GA 30309
                Telephone: (404) 881-7000
                Facsimile: (404) 881-7777

                *Proposed Attorneys for Debtor*